JACKSON v. KNIGHT. (No. 1154.)

(Court of Civil Appeals of Texas. Amarillo. April 18, 1917. Rehearing Denied May 9, 1917.)

1. LANDLORD AND TENANT ⊙⟳77 — ASSIGNMENT OF LEASE—SUFFICIENCY.

Where lessee contracted to transfer café business and lease to defendant and made delivery, this was sufficient assignment of lease without a formal written assignment; the lessee having parted with his whole term in the rented premises, the law implies an agreement on the part of the assignee to assume obligations of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 232.]

2. LANDLORD AND TENANT ⊙⟳76(3)—ASSIGNMENT OF LEASE — LANDLORD'S WAIVER OF CONSENT.

A provision in a lease prohibiting assignment without the landlord's consent in writing, being for his benefit, could be waived by him.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 229, 230.]

3. LANDLORD AND TENANT ⊙⟳76(4)—ACTION FOR RENT—EVIDENCE—CONSENT TO ASSIGNMENT.

In action against assignee for liability on lease, evidence held to show that landlord consented to assignment by accepting rents and by correspondence.

4. LANDLORD AND TENANT ⊙⟳80½ — ASSIGNMENT OF LEASE—EVIDENCE.

That purchaser of a café business paid rents under lease and attempted to transfer it to another was evidence that he considered and treated the entire lease as his property, although no formal assignment was made.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 231.]

Appeal from District Court, Wichita County; Wm. N. Bonner, Judge.

Action by J. L. Jackson against C. C. Knight. Plaintiff appeals from judgment for defendant and from order refusing to direct a verdict and refusing new trial. Reversed and rendered.

A. A. Hughes, of Wichita Falls, for appellant. Martin, Bullington, Boone & Humphrey, of Wichita Falls, for appellee.

HUFF, C. J. On the 27th day of June, 1913, J. L. Jackson and Simmons Bros. entered into a written lease contract to a certain piece of property in the city of Wichita Falls, known as the Hearn Café, for two years and eight months from the 1st day of February, 1914, by the terms of which J. L. Jackson, as lessor, leased to Simmons Bros. the property for the term named; the lessees agreeing to pay for the period $4,000, in 32 monthly payments of $125 each, payable on the 1st of each month. It was stipulated in the lease in case of default of any of the covenants the lessor should have the right to forfeit the lease, or the lessor might relet the premises for the remainder of the term for the account of the lessee for the best rent he could obtain, and the lessee should make good any deficiency. It is also stipulated the lessee should not assign the

lease or sublet the premises or any part thereof without the consent of the lessor in writing. One of the brothers of the partnership of Simmons Bros. withdrew from the firm, and the business was carried on by L. J. Simmons, on the premises and under the lease, to which the lessor Jackson consented. Afterwards, on the 17th day of August, 1914, L. J. Simmons and appellee, C. C. Knight, negotiated a trade and entered into a written contract, by the terms of which Knight sold to L. J. Simmons a section of land in Dallam county, Tex., and agreed to convey the land by a sufficient warranty deed, and to furnish an abstract of title thereto. In consideration for the conveyance, Simmons agreed to assume $2,100 indebtedness against the land and execute four notes, one for $500 and three for $1,000 each, due respectively August 17, 1915, August 1, 1917, 1918, and 1919, and, as a further consideration for the conveyance, the contract recites that on that day Simmons sold to Knight all the furniture and fixtures then located in the City Café and the Hearn Café, which sale was to be made by the written bill of sale, executed on that day; Knight to assume $510 against a piano therein situated. The fourth clause of the contract is:

"First party (Knight) shall give possession of said land to second party (Simmons) on January 1, 1915, and second party hereby agrees to give possession of said furniture and fixtures and the rooms in which same are located to first party on this date, with a transfer of the leases now held by second party on the rooms in which said furniture and fixtures are now located, and hereby guarantees that his lessor will consent and agree to said transfer of said lease."

This contract is signed by Knight and Simmons as first and second party, respectively, on the 17th of August, 1914. The evidence shows that Knight, on that day, took possession of the leased property and employed Simmons to run the restaurant for him therein, and that Simmons remained as such employé until September 8th, following, when he left. On the day the contract was made, Simmons went to see Jackson and informed him of the agreement with Knight, and that Knight had and would agree to take the lease. Jackson notified Simmons that he would agree to accept Knight, but said Knight would have to come over and sign the lease. The café and building were turned over to Knight, together with the lease contract. These instruments Knight took and thereafter paid two months' rent of $125 each, and afterwards sold the furniture and fixtures to Bowen and placed him in possession of the property. Bowen went to see Jackson, and told him he had bought the property and lease, and asked him if he would accept him as his tenant. Jackson told him that he would not, and thereupon wrote to Knight that he had accepted him (Knight) in lieu of Simmons, provided he carried out the contract, and that he was informed he had done so, and since that time he was informed Knight had transferred the lease to another

and that he (Jackson) was unwilling to agree thereto unless Knight would guarantee payment of the rents and performance of the other terms of the lease. Bowen paid the rents for two months, and Jackson received it on Knight's account. Afterwards it appears by suit and by agreement, the fixtures were sold to pay the rents then due, and that they sold for the sum of $375, which Jackson applied on the lease for the months of December, 1914, and January and February, 1915. Thereafter on May 1, 1915, the building was leased for the rest of the term by Jackson, for $75 per month; this being the best terms he could obtain therefor. Knight and Bowen abandoned the premises, and Jackson acted under the terms of the lease contract to relet on account of the lessee for the unexpired term. The evidence by Knight shows he was in possession of the lease turned over to him by Simmons, and that he wrote out a transfer of the lease to Bowen and procured Simmons to sign the transfer to Bowen. There was never any formal written transfer of the lease from Simmons to Knight further than as set out in the written contract executed by them in the trade of August 17, 1914. The effect of Knight's testimony and his answer to the petition of appellant is that he did not intend to and did not assume to pay the rents, and that he did not buy the lease, and that it did not enter into the trade with Simmons.

[1] The appellant requested the trial court to instruct a verdict for him, and also moved for a new trial because the evidence, under the pleadings and evidence, was not sufficient to support a verdict for the appellee. We believe under the pleadings and evidence the court was in error in refusing the charge and in refusing to set aside the verdict. It appears to be the contention of the appellee because Knight did not in terms assume to pay the rents that he was not liable, and, further, because there was no formal transfer of the lease; the lease was not in fact assigned. The contract stipulated that Simmons agreed to deliver possession of the furniture and the room in which it was located, together with a transfer of the lease on that room on that day, and guaranteed that he would get the consent of the lessor. On that day he did deliver possession of the room and turned over to Knight the lease contract. It was doubtless the theory of the appellee and of the trial court that, in order to constitute a transfer of the lease, it was necessary to obtain a formal written transfer. The written contract to transfer the lease and the delivery of the same would, in our opinion, constitute a transfer. Belcher v. Schmidt, 62 Tex. Civ. App. 411, 132 S. W. 833. It cannot be successfully contended that, under the written contract, Knight, when he took possession of the café, was the tenant of Simmons, or that Simmons could collect the rent from him. In other words, that Simmons was then the lessee, or that he

had a reversionary interest in the lease. The writing as effectually transferred the lease as it did the property, when Knight took possession of the property, the building, and the lease. There was nothing more to do. Knight afterwards treated the lease as his and assigned and transferred it to Bowen by writing out the transfer and by procuring Simmons to sign it, which he did at the request of Knight and to effect Knight's purposes.

The transfer was to the entire lease, and not only to a part of the term. Where such is the effect of the transfer, it is an assignment and renders the assignee liable for the rents as a matter of law, and there is no need of an agreement or stipulation to assume to pay the rents—the law fixes the liability. If the lessee parts with his whole term in all the rented premises, no reversionary interest remains in him, and a person taking through him is an assignee liable to the payment of the landlord as the original lessee contracted to pay, and according to the terms of the lease. Such is the effect of the authorities cited by the appellant. Harvey v. McGrew, 44 Tex. 413; Le Gierse v. Green, 61 Tex. 128; Loustaunau v. Lambert, 1 Tex. Civ. App. 434, 20 S. W. 940; Ascarete v. Pfaff, 34 Tex. Civ. App. 375, 78 S. W. 974; Campbell v. Cates, 51 S. W. 268; Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084; Martin v. Stiers, 171 S. W. 836. And we may add Forrest v. Durnell, 86 Tex. 647, 26 S. W. 481; Railway Co. v. Settegast, 79 Tex. 256, 15 S. W. 228; Wooldridge v. Railway Co., 38 Tex. Civ. App. 551, 86 S. W. 942.

[2, 3] We do not think it was necessary for Jackson to give his consent in writing in order to make the assignment valid. This provision, evidently, was placed in the contract for the lessor's benefit. He could waive this provision and accept Knight, which he did. There could be no doubt from the evidence that he did so. He testifies that he did, and he accepted the rents from Knight as his tenant and applied them on the lease contract. Railway Co. v. Settegast, 79 Tex. 256, 15 S. W. 228; Wright v. Henderson, 86 S. W. 799; Smith v. Price, 22 Tex. Civ. App. 296, 54 S. W. 254. We can see no good reason why his letter to Knight, dated October 28, 1914, is not a substantial compliance with the terms of the lease contract. In the letter he protested against Knight's attempted assignment of the lease to Bowen, in which he notified Knight he was holding him under the assignment from Simmons. This was in writing and certainly notified Knight he had accepted him as his tenant for the entire term. Simmons testified before the trade was closed he went to see Jackson and procured his consent and reported the result to Knight, but Knight testified he did not recollect whether Simmons so reported or not; but it is evident he so understood the matter, as there was some discussion shortly thereafter between him and Jackson about reducing the rent and he, each month, posted through the mails the amount of the rents due after he took possession. It does not occur to us, after having entered into the written contract with Simmons, and after taking possession of the lease and the café thereunder, that he should avoid his contract by setting up the want of Jackson's written consent. The failure to consent would only render the contract voidable by Jackson if he desired to declare the lease forfeited. He had a right either to waive or forfeit. He elected to waive, and in fact agreed to the assignment orally and by letter and notified Knight to that effect. Scott v. Slaughter, 35 Tex. Civ. App. 524, 80 S. W. 643.

[4] In this case we think the evidence establishes a written transfer, and that Knight accepted the transfer by taking possession of the property and the lease, relying upon Simmons' guaranty to obtain Jackson's consent to the transfer, which Simmons obtained; that Knight paid the rents under this lease and transfer and thereafter treated the entire lease as belonging to him and attempted to transfer it to Bowen and procured Simmons to sign the transfer for him and for his use and benefit. This action on his part evidences that he considered and treated the entire lease as his property.

The court, under the pleadings and evidence, should have instructed a verdict for the appellant, Jackson. This court will therefore reverse and render the judgment for all the rents unpaid on the remainder of the term according to the terms of the lease contract, less $75 per month paid Jackson by a tenant upon reletting the property, which appears he did under the terms of the original lease contract.

Reversed and rendered.