**SPEED v. JAY et al.   (No. 2385.)**

(Court of Civil Appeals of Texas. Amarillo. Dec. 17, 1924. Rehearing Denied Jan. 21, 1925.)

1. **Landlord and tenant ⬤⟶79(1), 208(2)—Purchaser of café from lessee held assignee, liable for rents and other obligations for rest of term.**

One purchasing café from lessee of building with lessor's consent, without contracting to pay rent to lessee, who retained no reversionary interest in lease, under which purchaser paid rents to lessor and operated business, *held* assignee, not sublessee, and hence liable to lessor for rent and other obligations of lessee for rest of term, though he did not orally assume performance of remainder of contract.

2. **Landlord and tenant ⬤⟶79(1)—Lessee and assignee reassigning to others, held not released from liabilities.**

Lessee *held* not released by assignment of lease, nor assignee by reassignment to others, from liability to lessor for rents and other obligations of lessee.

---

**3. Appeal and error ⬥⟾301—Matters not presented in motion for new trial not considered.**

Matters not presented in motion for new trial cannot be considered on appeal.

**4. Appeal and error ⬥⟾882(14)—Plaintiff, not pleading abandonment of homestead by defendant, cannot complain of submission of issue as to homestead rights.**

Plaintiff, not pleading abandonment of homestead by defendant, cannot complain of submission of issue as to latter's homestead rights.

**5. Appeal and error ⬥⟾1062(1)—Lessor held not injured by submission of issue as to amount of lessee's debt to garnishee bank when proceeds of insurance policies were paid to it.**

Lessor, suing for balance of fire insurance money in hands of garnishee bank, after payment of lessee's debt to bank, *held* not injured by submission of issue as to amount of such debt when proceeds of policies were paid to bank as assignee of lessee's rights thereunder.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by Guy B. Speed against R. E. Jay and others, in which defendant Craig Gilliland and another filed cross-action, and the Guaranty State Bank was made a party defendant. Judgment for plaintiff against all defendants except the named cross-complainant, and plaintiff appeals. Reversed and remanded.

M. J. Baird and Oxford & Oxford, all of Plainview, for appellant.

Kinder & Russell and W. W. Kirk, all of Plainview, for appellee Gilliland.

A. C. Hatchell, of Dallas, for appellee Guaranty State Bank.

HALL, C. J. On and prior to May 31, 1921, the appellant Speed owned a brick business building in Plainview, and, on said date, leased it to O. L. Duncan and W. D. Jordan for a period of two years. The lessees conducted a restaurant business in the building which was known as the "Cozy Café." Afterwards Duncan died, and Jordan continued the business until about the 10th day of August, 1922, when he sold it to J. B. Gilliland with the consent of the appellant. At the time of that sale the Guaranty State Bank of Plainview held a note in the sum of $1,500 signed by J. B. Jordan, secured by a chattel mortgage on the fixtures of the café. Jordan owed Williams & Martin a note for about $600, and was indebted to appellant Speed in the sum of $693.33, unpaid rent for the building. Gilliland assumed the payment of these debts as part consideration for the purchase of the business from Jordan, and executed his note to the bank in the sum of $1,500 in renewal of Jordan's note for about that amount. He also executed and delivered to appellant his note for the amount of unpaid rent and gave a chattel mortgage on the fixtures to Williams & Martin to secure their debt. Gilliland then insured the fixtures for the sum of $2,000 with a loss payable clause upon the policy to secure the bank. After leasing the building to Duncan and Jordan, appellant insured it against loss by fire. On or about October 5, 1922, Gilliland sold the business to R. E. and J. H. Jay; in this sale the Jays assumed and agreed to pay the indebtedness to the bank, Williams & Martin, and Gilliland as part of the consideration for the sale. Williams & Martin filed suit and recovered judgment for the amount of their debt, and foreclosing the mortgage lien. The building and fixtures were damaged by fire on the 3d day of January, 1923, while in possession of said Jays. After the fire the Jays abandoned the building and appellant took possession of it, and on or about the 15th day of April, 1923, after having the building repaired, leased it to other parties at $115 per month. After the fire the fixtures were sold by agreement of all parties interested for $1,050, the proceeds of sale being deposited in the registry of the court. From such proceeds, by agreement of parties, $600 was paid to Williams & Martin in settlement of their claim, and from the balance court costs in that suit were paid, leaving a remainder of $429.95, which was paid to appellant.

Appellant instituted this suit in the district court of Hale county, on the 26th day of July, 1923, against Craig Gilliland, and R. E. and J. H. Jay, in which he alleged the execution of the lease contract to Duncan and Jordan, and the sale of the business by them to Craig Gilliland, with appellant's consent; a verbal agreement on the part of J. B. and Craig Gilliland to accept the terms of said lease contract; the abandonment of the building by the Gillilands, and the delivery of possession thereof by them to R. E. and J. H. Jay; the failure of the Gillilands to pay the rent thereafter; the failure of the Jays to comply with the stipulations of the lease contract; and further alleged that on the 3d day of January, 1923, the Jordans carelessly permitted the same to be damaged by fire to the extent of $985.55; that by reason of the breach of the terms of the contract appellant was forced to pay out various sums totaling $43.90, and the subsequent leasing of the building to other parties for $115 per month for the remainder of the rental term. The appellant's petition also declared upon the note for $693.33 representing unpaid rents, and prayed for foreclosure of the chattel mortgage given to secure it. It is further alleged that the Jays assumed and agreed to pay the bank the amount of said $1,500 note; that they took out insurance on the furniture and fixtures, and, after the fire, had transferred and assigned the rights

under the insurance policies to the bank; that by agreement with the bank the proceeds of the insurance policies, amounting to $2,000, were paid to it with the understanding between the bank and appellant that said $1,500 note should be paid, and the balance of $500 should be held by the bank for the benefit of appellant, and other creditors of J. B. and Craig Gilliland. The prayer is for rents upon the building for eight months, the unexpired time of the lease contract, aggregating $1,040, and for $53.90, the cost of repairs on the building and extra charge for fire insurance; for judgment for the full amount of the rent note; for foreclosure of the chattel mortgage lien and landlord's lien upon the proceeds received from the sale of the fixtures, and against the balance of the fire insurance money in the hands of the bank; and for judgment against J. B. and Craig Gilliland for the sum of $985.50, the amount of damages to the building by fire; and for judgment against the Jays and Gillilands jointly and severally for $390, the amount of the rents on the building during the occupancy thereof by the Jays, less a credit of $300.20.

J. B. and Craig Gilliland answered by general denial and cross-action, in which J. B. Gilliland set up the issuance to him of insurance policies on his homestead; the service of writs of garnishment upon the companies, thus stopping the payment to him of the sum of $1,424.57, the amount due upon the policies; that said policies insured his homestead at the time of the fire, and were exempt from garnishment, and that any amount due under said policies was due the United Savings Bank to the extent of $902.02, which he owed said bank, and which was secured by a lien upon said homestead lots. Wherefore, he alleges that he was damaged in the above sum, with 6 per cent. interest. J. B. Gilliland further alleged that there was then in the hands of the Guaranty State Bank, and in the registry of the court, sufficient funds to pay off and satisfy the note executed by him in favor of appellant, which he prayed should be applied by the court to the satisfaction of said debt.

The Guaranty State Bank was made a party, and by its answer specially alleged that the Jays were partners in conducting said café, and, at the time and prior thereto, were indebted to it in the sum of $545.63 overdraft, and on a note in the sum of $211, and in the further sum of $1,522 evidenced by a note signed by Gilliland, which had been assumed by the said Jays, and which was secured by a chattel mortgage on the fixtures of the café. The bank alleged the assignment of the insurance policy held by the Jays on the fixtures, and set up an agreement between it and the appellant to collect the amount of damages under the policy, and to pay out of said sum all indebtedness due the bank; that the proceeds of the policy were not sufficient by $100 to pay the indebtedness which the Jays owed said bank. The Jays were also made parties to the suit, but filed no answers.

The issues were submitted to a jury, which resulted in a verdict, upon which the court entered judgment in favor of appellant against the Jays for the sum of $89.80, and against the Guaranty State Bank for the sum of $92.25, and against J. B. Gilliland for the sum of $265.45. It was further decreed that each of said defendants pay one-third of the costs, and that the plaintiff take nothing as against Craig Gilliland.

[1] It is first insisted that the court erred in submitting to the jury the following special issue:

"Did the defendant J. B. Gilliland verbally agree to carry out the contract of lease entered into between the plaintiff Speed and Jordan and Duncan?"

This interrogatory was answered in the negative. The contention under this proposition is that J. B. Gilliland having bought the café from W. D. Jordan with the consent of the appellant, and there being no contract between Jordan and Gilliland for the payment of rents by the latter to the former, and Jordan having retained no reversionary interest in the lease, and the said Gilliland having paid rents and operated the business under the lease contract, that Gilliland, as a matter of law, was liable to appellant for all rents during the remainder of the term of the lease. Under the facts it must be held that the transfer from Jordan to Gilliland constituted as assignment, and not a subletting, and, as such assignee, Gilliland is liable for the rent under the contract. It may be true, as found by the jury, that Gilliland did not "orally assume the performance of the remainder of the lease contract," but when he took an assignment of the lease he became bound, as a matter of law, to pay the rents and discharge the other obligations which it imposed upon the lessee. Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084; Jackson v. Knight (Tex. Civ. App.) 194 S. W. 844.

[2] We cannot imply a finding by the court to the effect that appellant ever released either Jordan or Gilliland, since there is no evidence in the record which would sustain such finding. The assignment from Jordan to Gilliland did not release Jordan, nor did the assignment from Gilliland to the Jays release Gilliland. Jordan and the Gillilands under the record, are still liable with the Jays. Cauble v. Hanson (Tex. Com. App.) 249 S. W. 175; Goffinet v. Broome & Baldwin (Tex. Civ. App.) 208 S. W. 567.

[3] We cannot consider the various contentions urged here under the second, fifth, sixth, and seventh assignments, for the reason that the matters were not presented to

# 1036

the trial court in appellant's motion for a new trial.

[4] The appellant is in no position to complain of the court's action in submitting special issue No. 3, relating to the homestead rights of Gilliland, for the reason that abandonment of the homestead by Gilliland was not pleaded by appellant. Abandonment must be pleaded. Huss v. Wells, 17 Tex. Civ. App. 195, 44 S. W. 33; Mexia v. Lewis, 3 Tex. Civ. App, 113, 21 S. W. 1016; Id., 87 Tex. 208, 22 S. W. 397.

[5] Appellant has failed to show any injury as the result of the court's action in submitting special issue No. 5 inquiring as to what amount J. H. Jay was indebted to the bank when the proceeds of the insurance policies was paid into the bank. We think this was a proper and material inquiry, especially from the appellant's standpoint.

For the error first pointed out, the judgment is reversed, and the cause is remanded.