**MARATHON OIL CO. et al. v. RONE et al.**

No. 13151.

Court of Civil Appeals of Texas.
Fort Worth.

April 26, 1935.

Rehearing Denied June 7, 1935.

Arthur Lee Moore, of Fort Worth, for appellees.

LATTIMORE, Justice.

A. W. Rone leased a filling station to the Three D's Products Distributors in May, 1930, for two years. During the existence of this lease the Three D's gave appellant an option on all its properties, including this lease, such option to expire December 1, 1930. Believing this option would be exercised, the Three D's executed an assignment of this lease to appellant. The option was extended to December 6, 1930, and one of the specifications required by appellant was that this lease be extended five years. Three D's procured this extension to itself at an advanced rental for the extension period, informing Rone of the prospective sale and reasons for the needed extension. It was attached to the assignment and delivered to appellant in the consummation of the purchase by appellant of the Three D's properties and the Three D's paid appellant the difference between the two-year rental rate and that for the five years' extension.

Appellant paid the rent monthly to the expiration of the two years' lease and then vacated the premises.

This suit is against appellant and the Three D's for the amount of rentals for the five years less payments received by Rone from other tenants during that period.

Three D's answered that it was the mutual intention of appellant and Three D's that the assignment to appellant cover the five years' extension, and that same was not included in the written lease by mutual mistake, and alleged and proved excuse therefor deemed sufficient by the trial court, and prayed inter alia for reformation of the assignment to include the five years' extension.

The assignment does not in such words state that appellant assumed the lease of Three D's, and appellant contends that it was under no obligation to Rone except during such time as it actually occupied the premises, and that when it delivered to Rone its acknowledgment that it no longer claimed any right of tenancy, and vacated, it was under no further liability by the lease being in privity to Rone to that time in estate only and not in contract.

R. C. Gwilliam, of Tulsa, Okl., and Hiner & Pannill and Thompson & Barwise, all of Fort Worth, for appellant.

While by the decisions of the various states there is difference of holding, McLean v. Caldwell, 107 Tenn. 138, 64 S. W. 16; Cohen v. Todd, 130 Minn. 227, 153 N. W. 531, L. R. A. 1915E, 846; Kanawha-Gauley Coal & Coke Co. v. Sharp, 73 W. Va. 427, 80 S. E. 781, 52 L. R. A. (N. S.) 968, Ann. Cas. 1916E, 786, we believe that the rule in Texas is that where the transfer of possession is an assignment of the whole estate of the tenant, the transferee, prima facie, is liable for the rental for the entire period of the lease. It is so stated in Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 293, 42 L. R. A. (N. S.) 1084, as follows: "The following test may be applied to determine whether the instrument in question is an assignment of the original lease, or a subletting of the premises: If it is an assignment, its legal effect must be a transfer of the right of possession of the property conveyed to Vidal and the creation of a privity of estate and contract between Mrs. Davis, the original lessor, and Vidal, to whom the possession was granted by the Dallas Brewery. This would be essential to constitute the instrument an assignment, and if it was an assignment Vidal obligated himself to pay the rent to Mrs. Davis."

Applying that test, our Supreme Court held the transfer there litigated to a subletting only.

Speed v. Jay (Tex. Civ. App.) 267 S. W. 1033, 1035 (Amarillo) is directly in point on the facts. Gilliland, an intermediate tenant, was held liable for rent after he had vacated and assigned his lease. "It may be true, as found by the jury, that Gilliland did not 'orally assume the performance of the remainder of the lease contract,' but when he took an assignment of the lease he became bound, as a matter of law, to pay the rents and discharge the other obligations which it imposed upon the lessee. Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084; Jackson v. Knight (Tex. Civ. App.) 194 S. W. 844."

In Johnson v. Neeley (Tex. Civ. App.) 36 S.W.(2d) 799, 801 (Waco), Johnson was an intermediate tenant. Holding him liable for rents after he surrendered possession, the court said: "While Johnson denied specifically that he assumed the obligations of said lease or that he ever even heard of the same, he paid rent from the time he began the occupancy of said building until April 1, 1928, at the rate of $112.50 a month, as stipulated therein. * * * Johnson alleged, in substance, that prior to September 1, 1928, he abandoned the occupancy of said building; that thereupon said Jones occupied the same; that Mrs. Delaney knew of such occupancy, and accepted rent from said Jones, and thereby estopped herself from claiming rent from him, the said Johnson. The only testimony bearing on this contention is that Johnson got the August rent from Jones, paid the same to Sleeper, took his receipt therefor and told him at the time that Jones was occupying the premises and would pay subsequent rentals. There is no contention that Jones did so. The gist of Johnson's contention is that a finding that Mrs. Delaney accepted rent from Jones with knowledge of the facts would release him as a matter of law. This contention is contrary to the authorities in this state and elsewhere. Cauble v. Hanson (Tex. Com. App.) 249 S. W. 175, 176 et seq., and authorities there cited; Id. (Tex. Civ. App.) 224 S. W. 922, 923 et seq.; McCelvy v. Bell (Tex. Civ. App.) 6 S.W.(2d) 390, pars. 2 and 9; Davis v. First Nat. Bank of El Paso (Tex. Civ. App.) 258 S. W. 241, pars. 6 and 7; Gray v. Tate (Tex. Civ. App.) 251 S. W. 820, pars. 2 and 3; Goffinet v. Broome & Baldwin (Tex. Civ. App.) 208 S. W. 567, par. 4."

In Leonard v. Burton (Tex. Civ. App.) 11 S.W.(2d) 668, 670 (El Paso), Leonard was an assignee tenant who had surrendered possession. The court there said: "Regardless of an express assumption to pay the rents, the appellants, as assignees of the lease, were bound by its terms and liable to pay the stipulated rent. Le Gierse & Co. v. Green, 61 Tex. 128; Campbell v. Cates (Tex. Civ. App.) 51 S. W. 268."

In 27 Tex. Jur. 373, it is stated: "The rule is otherwise, however, with respect to an assignee. The lessee having enjoyed a right to alienate the leasehold, the assignee is held to take the estate subject to the conditions expressed in the lease contract and to become bound to the original lessor for the performance of the obligations which were imposed upon his assignor and entitled to the rights which were secured to the latter."

While it is stated in King v. Grubbs (Tex. Civ. App.) 275 S. W. 855, 857, that the liability of the assignee "is upon an implied obligation by reason of the privity of estate," yet in that case the assignee was not a party to that suit and there was no

issue involving that question before the court in that case, the only issue being whether assignment of the lease released the assignor. This was also the issue in Cauble v. Hanson (Tex. Com. App.) 249 S. W. 175. Liability of this appellant on this very purchase was before the Amarillo court in Waggoner v. Edwards (Tex. Civ. App.) 68 S.W.(2d) 655, 661, and the appellant there held liable.

■ While plaintiff below did not plead the mutual mistake in the assignment, the defendant Three D's did, and asked judgment over against appellant, and that relief is substantially that granted below. We think such relief properly granted to the Three D's, even though it inures to the benefit of Rone.

■ Neither shall we discuss at length a contention that a plea of the statute of frauds and objection consistent therewith renders inadmissible oral evidence offered to show mutual mistake in a written contract not performable within a year. Such evidence is admissible by Supreme Court authority, Texas Pacific Coal & Oil Co. v. Crabb (Tex. Com. App.) 249 S. W. 835 as far back as Dunham v. Chatham, 21 Tex. 231, 73 Am. Dec. 228.

■ It is true the assignment to appellant was executed prior to the extension agreement by Rone, but it was not delivered until after such extension agreement had been required by appellant, and obtained, though not with the formalities of acknowledgment subsequently required by appellant and obtained by Three D's in acquiescence to such requirement. We think this no obstacle to reformation.

■ Appellant next contends that Scott, who, representing appellant, dealt directly with Three D's, was without authority to contract for the assignment of the five years' extension, and Wharton, representing Three D's, knew that the authority resided only in President Fleming. Wharton testified that he knew that when "it came to what the company would do, Mr. Fleming was the man who passed on that." Fleming signed the option agreement. Fleming was present when the demand was made on Wharton to get the five years' extension. Appellant's attorneys objected to the form of the extension, and it was returned by them to Wharton. He obtained the corrections and attached such extension to the assignment and delivered it to appellant. It was accepted, and the Marathon closed the purchase, paid the money, and still claims all the benefits of that transaction. Scott was vice president and general manager of the Marathon Oil Company. To admit that Fleming objected because Three D's did not have a five years' Rone lease to assign, demanded that he get it, refused to close the purchase without it, had the extension tendered him, paid for it, demanded a rebate on the purchase price because the rent was raised in the extension, and then say that Fleming did not know the same was being assigned to appellant, staggers credibility. It would be a reflection upon justice to hold that the law cannot refute such a contention. The trial court believed that the appellant knew of the agreement to assign the five years' lease, and we accept his decision.

■ After appellant vacated the premises and declined to occupy them further, Rone rented the same temporarily to various tenants. He testified that he never intended to prevent appellant from re-entering the premises, and only made other use of same in an effort to keep the premises occupied. At the most, from appellant's standpoint, a question of fact is raised as to whether Rone intended to terminate the liability of appellant to him. That fact has been resolved against appellant by the trial court upon sufficient evidence. Mere renting of the premises to another upon the tenant's vacating in violation of his contract is not a release of the tenant from his contract. Peticolas v. Thomas, 9 Tex. Civ. App. 442, 29 S. W. 166; Early v. Isaacson (Tex. Civ. App.) 31 S.W.(2d) 515; 27 Tex. Jur. 313, 314. In a case where the distinction is important, we say that the lessor may accept the breach by the tenant, retake possession and sue for his damages, or demand specific performance in the payment of the rent. If he takes the former route, his measure of damages, in case he has rerented, may be entirely the difference between the rental contracted for and that received. So in this case, Rone has offset against the unpaid rent the money received in the rerenting and use of the premises, and so pleads his case.

The judgment of the trial court is affirmed.