**STARK et al. v. AMERICAN NAT. BANK OF BEAUMONT.**

**No. 2940.**

Court of Civil Appeals of Texas. Beaumont.

Dec. 5, 1936.

Rehearing Denied Jan. 13, 1937.

Williams, Lee, Sears & Kennerly, of Houston, for appellants.

Sewell, Taylor, Morris & Garwood, of Houston, and Geo. D. Anderson, of Beaumont, for appellee.

O'QUINN, Justice.

The American National Bank of Beaumont, Tex., as the duly appointed and qualified executor and trustee of the estate of W. M. Carroll, deceased, brought this suit against W. H. Stark, H. M. Hargrove & Co., Inc., and W. H. Stark, H. M. Hargrove, and Geo. A. Wells, as trustees. The petition alleged that the H. M. Hargrove & Co., Inc., was a corporation duly incorporated under the laws of the state of Texas, on June 5, 1923, with an authorized capital of $40,000, one half of which was paid in and that the other half was never paid; that on May 16, 1930, the charter of said corporation was forfeited without judicial ascertainment by the Secretary of State, for failure to pay the

unpaid portion of the capital stock, and that the charter had never been reinstated; that no receiver had ever been appointed for said corporation, and that this suit was instituted on a claim of indebtedness against the corporation, and for judgment against it, as though it had not been dissolved; that at the time of the forfeiture of the charter of said corporation H. M. Hargrove was president, W. H. Stark was vice president, and Geo. A. Wells was secretary, and that said three persons constituted all of its directors, and were the managers and persons in charge of the affairs of said corporation; that, upon the forfeiture of its charter, said three persons became, and had since continued to be and still were trustees of the creditors and stockholders thereof; that said H. M. Hargrove, and W. H. Stark, and Geo. A. Wells were sued as such trustees; and that said W. H. Stark was also sued in his personal and individual capacity.

It further alleged that on June 7, 1923, W. M. Carroll, as lessor, entered into a lease contract with H. M. Hargrove & Co., Inc., as lessee (and attached a copy of the lease to the petition as an exhibit), whereby the lessor leased to lessee lot No. 218 in block No. 41 in the city of Beaumont, Tex., and that as a part of the lease agreement lessee agreed that it would, before January 1, 1926, erect upon the leased premises improvements of the reasonable value or first cost of $25,000, which provision, as to the time in which improvement should be erected, was by agreement extended, and such improvements made within the time, as extended.

That, among other things, said lease provided:

(a) That lessee should pay rent on said leased premises, to wit:

From June 1, 1923, to January 1, 1924, $150 per month.

From January 1, 1924, to January 1, 1926, $300 per month.

From January 1, 1926, to January 1, 1929, $400 per month.

From January 1, 1929, to June 1, 2022, $600 per month.

(b) That "should default be made in the payment of rent, and such default continue for a period of ninety (90) days after written notice of same to Lessee and demand for payment of it given by Lessor, the Lessor shall have the right, at his election, to declare the entire lease cancelled," and provided further that should the leased property be improved by lessee and there be outstanding bonds or other indebtedness against the lease with such improvements, that the holder of same might redeem under and in accordance with the provisions therefor contained in the lease.

(c) That lessee should pay all taxes and assessments on or against the leased premises, and that: "In other words, it is understood and agreed that Lessor will receive the rentals above mentioned free and clear of all expenditures," and, "it being the purpose of this lease to provide for the payment of rental herein stated, and this being the consideration in the mind of Lessor in executing this instrument, after said building is constructed as aforesaid, it is contemplated and agreed that the control of Lessee over said property and its rights therein, shall be absolute so long as said rental is paid and the title to said property is preserved to the Lessor."

(d) That "this contract shall be binding upon, and inure to the benefit of, as the case may be, the parties hereto, their heirs, executors, administrators, successors and assigns, it being expressly agreed that the Lessee may assign or sublet either the whole or any part of said premises."

(e) That "Lessee is given the right to assign or sublet all or any portion of the leased premises, subject to the provisions hereof; provided, however, that this privilege shall not be construed to relieve Lessee of any of the agreements or obligations herein made or undertaken by him."

(f) That, "unless sooner terminated in accordance with the provisions hereof, this lease shall continue in full force and effect for a period of ninety-nine (99) years from and after June 1, 1923," and bound lessee to keep the leased property adequately insured under the provisions of the lease.

The petition further alleged that on December 12, 1930, lessee, H. M. Hargrove & Co., Inc., for a valuable consideration ($102,500 cash) by an instrument in writing sold, assigned, and transferred to W. H. Stark all of its right, title, interest, and estate in and to said lease, executed by W. M. Carroll, as lessor, and H. M. Hargrove & Co., Inc., as lessee, and that by Stark's acceptance of the assignment of said lease and the provisions of said assignment, he assumed, became obligated,

and agreed to pay to said Carroll and his successors all rents thereafter to become due under the lease, and to perform all other obligations imposed upon the lessee.

It was further alleged that, since the assignment to him of said lease, said Stark had been and still was the assignee of the original lease under same, and the owner of the improvements on the leased premises, but that he, said Stark, being erroneously advised that he could avoid further liability as assignee of said lease by making a simulated or colorable transfer of same, caused three of his employees (naming them) to organize a corporation under the laws of the state of Texas, on October 22, 1932, with a capital stock of $1,000 known as Coast Realty Company, for the purpose of enabling said Stark to assign and transfer to said corporation said lease, and that on said date, October 22, 1932, said Stark did in writing transfer and assign said lease to said corporation for a cash consideration of $1,000, but that in fact said Stark continued to be and still was the real owner of said lease and the improvements on said leased premises, and continued to pay such rents as were paid under said lease for more than a year after the assignment of said lease to said Coast Realty Company. Many other allegations as to the fictitiousness of the Coast Realty Company, and its purpose, were made which we do not deem necessary to state. Carroll the owner, of the leased premises died December 3, 1933, and appellee bank was duly appointed and qualified as executor of his estate.

Plaintiff's prayer was for judgment for the debt claimed against W. H. Stark, and H. M. Hargrove & Co., Inc., and also against H. M. Hargrove, W. H. Stark, and Geo. A. Wells, as trustees of said H. M. Hargrove & Co., Inc., for the full amount claimed, and for general and equitable relief.

Defendant W. H. Stark answered by general demurrer, special exceptions, general denial, and specially denied that he had ever assumed, either by the effect of the written assignment of the lease to him, or otherwise, any of the obligations of the original lease, except for the time that he retained title to the lease and possession of the leased premises, and alleged that during that time he fully paid off and discharged said obligations. He further specially answered that he made a bona fide assignment of the lease and delivered possession of same together with the leased premises to the Coast Realty Company.

Defendants H. M. Hargrove & Co., Inc., W. H. Stark, H. M. Hargrove, and Geo. A. Wells, as trustees, answered by general demurrer and general denial.

At the close of the evidence, W. H. Stark and H. M. Hargrove & Co., Inc., requested an instructed verdict in their favor which was refused.

The cause was then tried to a jury upon special issues in answer to which they found: (a) That W. H. Stark, in connection with acquiring the Carroll lease from H. M. Hargrove & Co., Inc., agreed to assume the liabilities imposed upon H. M. Hargrove & Co., Inc., by the terms of the lease; (b) that the assignment of the Carroll lease from W. H. Stark to Coast Realty Company was fictitious and colorable; (c) that, since the assignment to it by W. H. Stark of the Carroll lease, the Coast Realty Company had been holding said lease as the agent of W. H. Stark; and (d) that, after the assignment of the Carroll lease from W. H. Stark to Coast Realty Company, he, the said Stark, in fact continued to be the owner of the Carroll lease.

On the findings of the jury, judgment in favor of appellee was entered against W. H. Stark individually, and H. M. Hargrove & Co., Inc., and against W. H. Stark, H. M. Hargrove, and Geo. A. Wells as trustees of H. M. Hargrove & Co., Inc., for $15,925.25, with 6 per cent. interest thereon from the date of the judgment, together with costs of suit. Motion for a new trial was overruled, and we have the case on appeal.

By several assignments of error, appellants, in substance, assert that the court erred in overruling their exceptions to appellee's petition, and in refusing their request for an instructed verdict, because, they say, the allegations in the petition against which they leveled their exceptions, and the undisputed evidence show that appellant W. H. Stark never agreed to discharge the obligations under the lease from Carroll to H. M. Hargrove & Co., Inc., and which was assigned to and accepted by him, further than as by legal implications he agreed to perform during the time that he held possession of the leased premises, and that this he did.

Appellee answers these assignments by the counter proposition that W. H. Stark,

by his acceptance of the assignment and transfer of the lease to him, and taking possession of the leased premises, regardless of any specific agreement to do so, assumed and agreed to pay and thus became obligated to pay Carroll, and his successors, all rents thereafter becoming due under the terms of the lease, and to perform all obligations imposed on the lessee therein.

We believe that appellee's contention is sound. The lease from Carroll to H. M. Hargrove & Co., Inc. (as set out supra) provides:

"This contract shall be binding upon, and inure to the benefit of, as the case may be, the parties hereto, their heirs, executors, administrators, successors and assigns, it being expressly agreed that the Lessee may assign or sublet either the whole or any part of said premises."

And, "Lessee is given the right to assign or sublet all or any portion of the leased premises, subject to the provisions hereof; provided, however, that this privilege shall not be construed to relieve Lessee of any of the agreements or obligations herein made or undertaken by him."

It is without dispute that on and after December 12, 1930, the date that H. M. Hargrove & Co., Inc., assigned the lease to W. H. Stark, that he, Stark, took possession of the leased premises, paid the rent, and performed all of the other obligations imposed by the lease upon the original lessee, at least until October 27, 1932, when he executed to the Coast Realty Company an instrument purporting to assign to it all of his right, title, and interest in and to the lease. It is believed that, under the terms of the lease, set out supra, W. H. Stark, when he purchased, received and accepted the assigned lease from H. M. Hargrove & Co., Inc., and took possession of the leased premises, he then and there became liable for and obligated to pay to Carroll, his successors and assigns, all rents thereafter falling due under the lease, and to perform all of the obligations imposed on the lessee therein, and that this liability was continuing, and could not be avoided by a reassignment of the lease; in other words, by privity of contract, the liability under the lease attached to and continued with each subsequent holder of the lease under an assignment of same. Moreover, that this might not be questioned,

lessor provided in the lease that the lessee should have the right to assign the lease, but that this privilege should not be construed to relieve the lessee of any of the agreements or obligations provided in the lease; and, further, that the lease contract should be binding upon and inure to the benefit of all parties thereto, and their heirs, executors, and assigns, and so the full terms of the lease contract followed and became and remained binding upon each successive party to same.

Appellants cite many authorities from numerous jurisdictions in support of their contention that an assignee who has not expressly assumed the obligations of the original lease may relieve himself of liability for future rents by a reassignment of the lease. This is the law in many jurisdictions, but we understand the rule in Texas to be otherwise. In Jackson v. Knight (Tex.Civ.App.) 194 S.W. 844, 846 (writ refused), it is said:

"The transfer was to the entire lease, and not only to a part of the term. Where such is the effect of the transfer, it is an assignment and renders the assignee liable for the rents as a matter of law, and there is no need of an agreement or stipulation to assume to pay the rents— the law fixes the liability."

Speed v. Jay (Tex.Civ.App.) 267 S.W. 1033, 1035, is very similar on the facts relative to assigning leases to the instant case. There Speed on May 31, 1921, leased certain realty to O. L. Duncan and W. D. Jordan for a term of two years. The lessees conducted a restaurant business in the building. Duncan died and Jordan continued the business until August 10, 1922, when he sold to J. B. Gilliland with the consent of Speed. October 5, 1922, Gilliland sold to R. E. and J. H. Jay. Before the expiration of the lease, the Jays abandoned the premises. Speed sued Gilliland and the Jays to recover rent for the unexpired term of the lease contract. It was held that Gilliland, when he took an assignment of the lease from Jordan, the first lessee, became bound, as a matter of law, to pay the rents and discharge the other obligations which the lease imposed upon the lessee. The court also further held: "The assignment from Jordan to Gilliland did not release Jordan, nor did the assignment from Gilliland to the Jays release Gilliland. Jordan and the Gillilands under the record, are still liable

212

with the Jays." (Citing Cauble v. Hanson (Tex.Com.App.) 249 S.W. 175.)

In the Jay Case, as in this case, the Gillilands were the intermediate lessees. They held by assignment of the lease. So here did Stark. They assigned their lease to the Jays, as here did Stark assign his lease to Coast Realty Company. There the original lessee, Jordan, and Gilliland, the first assignee of the lease, and the Jays, the last assignee of the lease, were each and all held liable to the original lessor for the payment of rents under the lease. So here H. M. Hargrove & Co., Inc., the original lessee, and W. H. Stark, the assignee of the lease, whether his assignment to Coast Realty Company was or was not a valid transaction, are liable for the payment of the rents under the terms of the lease.

In Waggoner v. Edwards (Tex.Civ. App.) 83 S.W.(2d) 386, 388, Edwards, on May 28, 1930, leased certain premises to Three D's Products Distributors, Inc., for a period of three years at a rental of $250 per month. The lessee occupied the leased premises and paid the rent until December 4, 1930. On that date, December 4, 1930, said lessee assigned its lease to the Marathon Oil Company. On July 27, 1932, said oil company assigned the lease to T. D. Farley who occupied and used the premises until March 20, 1933, when the lease was canceled by the lessor. The Marathon Oil Company paid the rent for and during the time it had possession of the leased premises. Farley failed to pay rent. The suit was for rents as per the terms of the lease contract. The Marathon Oil Company contended that it did not assume to pay the obligations imposed on the lessee by the lease contract, and that as it had paid the rent for the time it occupied and used the premises, lessor had no right of action against it for rents accruing after it assigned the lease to Farley. In disposing of the question, the court said: "The law in Texas seems to be settled against this contention." Writ of error was refused.

It will be observed that in the case discussed there were three lessees: (1) Three D's Distributors Products Inc.; (2) Marathon Oil Company by assignment of the lease; and (3) T. D. Farley, also by assignment of the lease. In the instant case there were three lessees, to wit: (1) H. M. Hargrove & Co., Inc.; (2) W. H. Stark, by assignment of the lease; and

(3) Coast Realty Company, by assignment of the lease (if Stark's assignment to it was valid). Stark here occupies the identical position as lessee, by assignment, as did Marathon Oil Company. The court held Marathon Oil Company—intermediate lessee by assignment—liable. For the well settled reason in law, here Stark is also liable, by privity in contract with the lessor. See: Marathon Oil Co. v. Rone (Tex.Civ.App.) 83 S.W.(2d) 1028 (writ refused); Cauble v. Hanson (Tex.Com. App.) 249 S.W. 175.

What we have said disposes of the case, and renders discussion of other assigned errors unnecessary. The judgment should be affirmed, and it is so ordered.

Affirmed.

## On Rehearing.

COMBS, Justice.

In the original opinion in this case we followed the rule of decision announced in Jackson v. Knight (Tex.Civ.App.) 194 S.W. 844 (writ refused); Speed v. Jay (Tex.Civ.App.) 267 S.W. 1033 (writ refused), and Marathon Oil Co. v. Rone (Tex.Civ.App.) 83 S.W.(2d) 1028 (writ refused), wherein it was held in substance that, where a lessee assigns a lease, the assignee is thereby rendered liable as a matter of law for all rents thereafter maturing for the full term stipulated in the original lease, without any agreement or stipulation on his part to assume their payment.

The writer assents to such holding and to the judgment entered by this court in this case solely because the holding follows the present rule of decision in this state. He is firmly convinced that the rule is not sound and that it is contrary to the holdings of the vast majority of other jurisdictions.

The writer realizes that it is not the function of Courts of Civil Appeals to abrogate, or in any respect to modify, an established rule of decision in this state. That function properly rests alone with our Supreme Court for the obvious reason that to permit Courts of Civil Appeals to ignore established precedent would create all manner of confusion. But the writer trusts that it is not improper for him to express here the thought that the rule ought to be re-examined and a rule of decision promulgated in keeping with the

great weight of authority and which it is believed is more consistent with the principles of justice.

The obvious effect of the rule followed in this case is to bind not only the original lessee to the payment of all rentals which may accrue under his contract with his lessor, but to likewise bind every subsequent assignee of the lessee to a like performance of all the covenants of the original contract. In other words, it would place an assignee in complete privity of contract with the original lessor as a matter of law by reason of the assignment alone, without any stipulation or agreement on his part to become so bound. It is believed that such rule is unnecessarily harsh and unjust and may, in its operation, tend to hamper the assignment of long term leases.

The rule followed by the English courts and by at least a vast majority of American jurisdictions is thus stated in 35 Corpus Juris, 996:

"The assignee of a term for years is liable upon the covenants in the lease which run with the land. But from the mere fact of assignment, the assignees are liable only on such covenants, since they are in privity of estate only, and not in privity of contract. However, where the assignee expressly assumes the covenants of the lessee, the liability arises which is based upon privity of contract, and, subject to the rules permitting a person for whose benefit a contract is made to sue thereon, the landlord may maintain an action by reason thereof."

It will be observed that under such rule the obligation of the assignee to pay rent to the lessor as stipulated in the original contract arises out of a privity of estate and not by privity of contract, in the absence of the assignee's agreement to assume the contract. Such being the case, an assignee is liable to pay the rents so long as he owns the estate but, when he transfers or assigns it to another, his liability for the rents ceases. The rule is thus stated in Jones on Landlord & Tenant, § 429:

"The liability of an assignee upon the covenants of the lease continue only so long as the privity of estate continues; when that ceases his liability ceases. That an assignee of a lease may by reassignment divest himself of all liability upon the lease, is well established."

It would serve no good purpose to here cite the many authorities which might be cited to show that the rule above stated is the one prevailing in the vast majority of American jurisdictions. It may be helpful, however, to briefly refer to a few of the authorities in other jurisdictions to illustrate the application of the rule.

When an owner demises his property by lease, all covenants and agreements of the lease contract imposed upon the lessee become the lessee's personal obligation by reason of the contract. Thus he becomes personally obligated, unless it is otherwise stipulated, to pay the agreed rental for the full term specified in the lease, which personal obligation of the lessee, in the absence of a release of some kind, continues for the full term regardless of any assignment which he may make. This results, of course, from the contract he has entered into. But, when he assigns his lease, the assignee does not by his mere acceptance of the assignment become a party to the contract between the lessor and lessee. But there are certain covenants which, because of their relation to the property, are deemed to be more than mere personal covenants of the lessee. They attach to the property and are in the nature of covenants running with the land. And, since they attach to the estate, they are binding upon all persons who take the estate by assignment. No agreement of the assignee to be bound is necessary. He assumes such covenants as a matter of law by accepting the assignment and thus becoming entitled to use and enjoy the estate. Among the covenants which are deemed to run with the land is the obligation to pay the rent stipulated in the lease. And thus the assignee's liability to the lessor for the payment of rentals arises not out of privity of contract between the lessor and his lessee's assignee, but springs from privity of estate and is grounded upon the obligation of the assignee to perform the conditions upon which the estate he owns and has the right to enjoy was granted. And so it follows that an assignee is personally liable for rents accruing while he holds the leasehold. But, when he parts with the estate, his obligation for the payment of rent ceases. By an assignment he lays down both the estate and its burdens. Johnson v. Sherman, 15 Cal. 287, 76 Am.

Dec. 481; Consol. Coal Co. v. Peers, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624; Dougherty v. Matthews, 35 Mo. 520, 88 Am.Dec. 126; Tyler Commercial College v. Stapleton, 33 Okl. 305, 125 P. 443, 42 L.R.A.(N.S.) 162, Ann.Cas.1916E, 837; Harms v. Entleman, 21 Ga.App. 295, 94 S.E. 276.

Of course an assignee may, by his contract of assignment with the assignor, limit his right to reassign or he may assume the burdens of the original contract. But we are not here dealing with the contract between assignor and assignee but only with the question of whether the assignee, by reason of the assignment alone, establishes a privity of contract between himself and the original lessor. As between them there is no privity of contract. So far as the owner of the property is concerned, the assignee has an absolute right to reassign the estate and thus relieve himself of liability for future rents. It is consequently immaterial that his assignment be made to a person financially irresponsible or that it was made for the deliberate purpose of relieving himself from future liability. Johnson v. Sherman, 15 Cal. 287, 76 Am.Dec. 481; Hartman v. Thompson, 104 Md. 389, 65 A. 117, 118 Am.St.Rep. 422, 10 Ann.Cas. 92; Bell v. American Protective League, 163 Mass. 558, 40 N.E. 857, 28 L.R.A. 452, 47 Am.St.Rep. 481. In such case there is no fraud upon the right of the property owner for there is no principle of law or morals which requires an assignee to retain the estate for the protection of the lessor. Hartman v. Thompson, 104 Md. 389, 65 A. 117, 118 Am.St.Rep. 422, 10 Ann.Cas. 92. The measure of his personal liability for rents is to pay the rent so long as he keeps the estate. Cohen v. Todd, 130 Minn. 227, 153 N.W. 531, L.R.A. 1915E, 846; Childs v. Clark & Couch, 3 Barb.Ch.N.Y. 52, 49 Am.Dec. 164; Washington Natural Gas Co. v. Johnson, 123 Pa. 576, 16 A. 799, 10 Am.St.Rep. 553. See, also, notes 52 L.R.A.(N.S.) 983.

Of course, for an assignee to relieve himself from liability for rents by assignment the assignment must be bona fide and not merely colorable. A "colorable assignment" is one made to cancel the assignor's title while he continues to receive the benefits from the use of the property. See notes, 52 L.R.A.(N.S.) 989. It is apparent that in such case his privity of estate has not in fact terminated and he is, therefore, still liable for the rents notwithstanding a purported assignment.

In the instant case there was an allegation and a jury finding to the effect that the assignment in question was colorable. Under the rule prevailing in other states, the assignment was not colorable. It was made to a corporation chartered by the state and capable of taking the title. That is the controlling question. The assignment was in fact made and as between the plaintiffs and the assignor, Stark, the purpose for which it was made was wholly immaterial. The assignment terminated the estate and as a legal consequence the future liability of the assignor to pay the rentals.

It seems to the writer that the common-law rule followed in so many jurisdictions, as above indicated, is fair and reasonable in its application. When a property owner leases his property to another and confers upon such lessee the rights to assign to whomsoever he pleases, he impliedly relies upon his lessee for the performance of the covenants of the lease. In addition to that he has the personal obligation of each assignee so long as he keeps the estate and also the right at all times to repossess his property for a breach of covenant. And while the lessee, when he assigns, may impose upon his assignee the obligations of the original lease contract, that matter should be left to the contract of the parties. It should not be read into an assignment as a mere legal implication.

It seems to the writer that the unfairness of the Texas rule is strikingly illustrated in the instant case. For here we have been compelled to hold that W. H. Stark, by reason of his acceptance of the assignment, thereby became bound for the payment of future rentals at the rate of $600 per month for more than ninety years. And such liability arises not from a contract to be so bound, but results merely from the application of a rule of decision which has the effect of reading into his contract an obligation which he did not by its terms assume and of which he was perhaps wholly ignorant at the time he took the assignment.

It seems to the writer that the rule prevailing in other states which has the effect of leaving the matter of such assumption of future rentals by an assignee to the contract between him and his assignor is the sounder rule, as rules long

sanctioned by court decision are apt to be. The principle that every man is presumed to know the law is a necessary legal presumption to be indulged in proper cases. But, although necessary to an orderly administration of justice, it is in fact purely a legal fiction. And courts should hesitate to add new principles to the already too complicated system of precedent law which a man is presumed to know. They should not hesitate to abrogate a rule which is found to be clearly unsound in principle and unjust in application. It seems to the writer that the existence of such unsound rules of construction give rise to much of the "new doctrines," which appear from time to time in our decisions. Usually such new rule but expresses the effort of the court to do justice in the case by relieving a litigant from the unjust result of the application of a rule of law which he was presumed to know but did not.