OPINION. HaRron, Judge: Issue 1. — In 1940 petitioner sold some of the stock of the C. I. Drilling Co. The stock was a capital asset. The question to be determined is what percentage of the capital gain is to be taken into account in computing net income under section 117 (b) of the Internal Revenue Code. The stock was acquired in February 1940 and was sold in March 1940. Respondent determined that 100 per centum of the gain should be taken into account because the stock, a capital asset, was held for less than 18 months. He denied petitioner’s claim that the holding period of the stock was 24 months, or more, which was founded upon adding the holding period for the rig to the holding period for the stock. Respondent’s view is that the capital asset which was sold, the stock, was not held longer than the actual period of one month, because the property given in exchange for the stock was not a capital asset. It, the rig, was property which had been used in a business and was subject to the allowance for depreciation. Consequently it was not a capital asset within the definition of section 117 (a) (1). Respondent contends that petitioner can not avail himself of the period for which he held the rig, as a member of the partnership of Cron and Gracey (City Bank Farmer’s Trust Co. v. United States, 48 Fed. Supp. 98), before the exchange of the rig for stock in the corporation, since during that period he did not hold a capital asset as defined in the statute. Respondent’s contention seems logical, but it is in conflict with subsection (h) (1) of section 117 of the Internal Revenue Code,[1] upon the terms of which petitioner relies. The stock in question was “property received on an exchange.” The exchange was one in which no gain or loss was recognized, and, therefore, the basis of the stock was the same as the basis of the rig, the property given in the exchange. Under these facts, to which the parties agree, the determination of the period for which the stock was held is prescribed by subsection (h) (1). The holding period for the stock shall include the holding period for the rig, under that section. The matter is controlled by the statutory provision. It is not stated in that provision that its application is limited to instances where the property given in an exchange is a capital asset. The provision applies where the property received in an exchange is a capital asset. The terms of subsection (h) (1) are clear. The precise question presented has not been brought to issue before any court, as far as can be ascertained. The Commissioner has not incorporated into his regulations, at any time, the interpretation of subsection (h) (1) which is advanced here. Respondent cites two rulings where he has taken the position which he took here, G. C. M. 621 (1926), C. B. V-2, p. 5 (at p. 7); and G. C. M. 11557 (1933), C. B. XII-1, p. 128. Consideration has been given to those rulings, but, under the facts of this proceeding, we must reach the conclusion stated above. Under this issue, respondent’s determination is reversed. Issue 2. — The principle is now well established that the income derived from the production of oil and gas is taxable to the owner of the capital investment in the oil and gas in place. The same principle determines to whom a deduction for depletion is allowable. Anderson v. Helvering, 310 U. S. 404; Helvering v. Bankline Oil Co., 303 U. S. 362; Helvering v. O'Donnell, 303 U. S. 370; Helvering v. Elbe Oil Land Development Co., 303 U. S. 372. In order for petitioner to be sustained in his contentions, the Gulf Oil Corporation, after its assignment, must be considered as having retained an economic interest or a capital investment in the oil and gas in place. Petitioner apparently makes this contention, relying upon a twofold argument. He attaches some importance to the fact that three of the assignments to Cron and Gracey of interests in the Jarvis lease contained no express assumption on the part of the partnership to account to Gulf Oil Corporation for one-fourth of the net profits to be derived from the operation of the lease. From this he argues that the amounts paid to Gulf in the taxable year can not be considered as additional leasehold cost. He then contends that, since the agreement of December 17, 1937, between the partnership and Gulf contained a provision that the covenants therein should run with the leasehold estate, Gulf received an economic interest in the gas and oil in place. Substantially the same issue presented here, on very similar facts, was decided by us in Quintana Petroleum Co., 44 B. T. A. 624. In that case we held that the taxpayer was not entitled to deduct as a business expense a payment to Gulf which represented one-fourth of the net proceeds derived from the operation of leased properties. It was held that the payment constituted a capital expenditure. In affirming our decision, 143 Fed. (2d) 588, the Circuit Court of Appeals for the Fifth Circuit said: The obligation of the taxpayer to pay one-fourth of the net proceeds arising from its operation of the lease arose out of a personal covenant. Such obligation vested no interest in the payee in the oil and gas in place, and entitled the payee to no percentage depletion on the amount received. The taxpayer’s title to the oil and gas in place was unaffected thereby. This it recognized, for it claimed (and was allowed) percentage depletion on the gross income from production without deduction for net-profit payments. An outright assignment is a sale, not a sublease. Net-profit payments are payments on the purchase price. As capital investments they may not be treated as business expenses or as rentals or as royalties. Cf. Commissioner v. Rowan Drilling Co., 130 F. (2d) 62. It seems clear that the obligation of the partnership to account to Gulf for one-fourth of the profits derived from its operation of the leased property was a personal covenant. After the assignment of the lease by Gulf to Bunte, Gulf no longer retained any interest or capital investment in the oil and gas in place. The assignment of the lease was a sale of all of Gulf’s interest in the property, and the reservation of the right to receive one-fourth of the net profits was merely part of the purchase price on such sale. From the record, it appears that petitioner claimed and was allowed percentage depletion on the gross income from production without deduction for net profit payments. At the time the return was filed, petitioner apparently believed that the partnership owned the full economic interest in the gas and oil in place. The fact that some of the assignments to the partnership did not contain an express agreement on its part to account to Gulf for one-fourth of the net profits is immaterial. The law implies a legal obligation on the part of the assignee to assume the burdens imposed by the original contract where it accepts the benefits and advantages of that contract. Kirby Lumber Co. v. R. L. Lumber Co. (Tex. Civ. App.), 279 S. W. 546; Marathon Oil Co. v. Rowe (Tex. Civ. App.), 53 S. W. (2d) 1028; Jackson v. Knight (Tex. Civ. App.), 194 S. W. 844. Nor do we think that the subsequent agreement of December 17, 1937, between the partnership and Gulf gave Gulf an economic interest in the oil and gas in place merely because of the provision that the covenants were to run with the leasehold estate. An analysis of that agreement is convincing that its real purpose was to set forth the proper accounting procedure to be used by the operators of the leased property in ascertaining the amount of net profits derived from the operations. It is in this light that the covenants are to be considered as running with the leasehold estate. In so far as the obligation of the partnership to account to Gulf for one-fourth of the net profits is concerned, Gulf had nothing after the agreement that it did not have before. Petitioner’s alternative contention that the payment made to Gulf in the taxable year should be excluded from gross income is also untenable. A similar contention was made and rejected in Burton-Sutton Oil Co., 3 T. C. 1187. See also Schermerhom Oil Corporation, 46 B. T. A. 151. Accordingly, respondent’s determination on this issue is sustained. Reviewed by the Court. Decision will be entered under Rule SO. Mellott, J., dissents on the first issue. (h) Determination op Period for Which Held. — Por the purpose of this section— (1) In determining the period for which the taxpayer has held property received on aD exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 113, the property received has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as the property exchanged.