A. D. JUILLIARD & Co., INC. *vs.* AMERICAN WOOLEN COMPANY.

JUNE 14, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action in assumpsit to recover installments of rent and taxes in the total amount of $2935.83, allegedly due for the period between September 1940 and March 1941 under a lease of certain premises in the city of Providence. A justice of the superior court, sitting without a jury, rendered a decision for the defendant. The case is before us on plaintiff's exception to this deci-

sion and also on certain other exceptions to rulings in the case.

Unless otherwise specified, all parties to transactions hereinafter mentioned are corporations. The instrument involved in this case is in reality a sublease, but since this fact is without legal significance in determining the questions before us, we will refer to that instrument merely as a lease.

On May 12, 1893, the Atlantic Mills leased certain premises in the city of Providence to the Riverside Worsted Mills for the term ending September 1, 1955. In this lease the specific covenant which the plaintiff asserts the defendant has assumed is to pay rent and certain other charges as therein set forth. This lease contains no restrictions whatever against assignment, nor does it provide that, upon an assignment of the lease, the assignee should assume and be bound for the entire unexpired term by the covenant just mentioned. The plaintiff succeeded to the rights of the lessor in this lease on December 4, 1936.

On April 15, 1899, the lessee, Riverside Worsted Mills, assigned the lease to the American Woolen Company, a New Jersey corporation, which in turn assigned it, on February 15, 1916, to the defendant American Woolen Company, a Massachusetts corporation. Four assignments of the lessee's interests occurred between 1916 and the bringing of this suit on April 14, 1941. The names of the successive assignees and the dates of such assignments are as follows: National & Providence Worsted Mills, a subsidiary of the defendant, December 22, 1931; American Woolen Company, the present defendant, December 26, 1934; Textile Realty Company, also a subsidiary of the defendant, June 1, 1939; and Reo Realty Company, November 21, 1939. The defendant admits that it was virtually the lessee until the lease was assigned to the Reo Realty Company, but denies that in this assignment it retained any beneficial interest in or control of the lease or premises covered thereby. In no one of these assignments did the as-

signee agree to assume the obligation to pay rent for the unexpired term of the lease.

The plaintiff's first contention raises a question of law, which appears not to have been heretofore considered by this court, so far as we have been able to ascertain. Broadly stated, this contention is that the assignee of a lease of real property, as here, is liable for the payment of the stipulated rent for the entire unexpired term, notwithstanding that the assignee did not agree to assume such obligation and assigned the lease before the expiration of the term.

This contention is contrary to the overwhelming weight of authority both in England and this country. Excepting certain decisions by the Texas civil court of appeals, which we will presently consider, the courts in this country have consistently held that, in the absence of the assumption by the assignee of the obligations of the lease, the liability of such assignee to the lessor rests in privity of estate which is terminated by a new assignment of the lease made by the assignee. This firmly established principle of law is subject to an exception which we will consider later in this opinion in connection with plaintiff's third main contention. The following are only a few authorities on this point: *London* v. *Richmond*, 2 Vern. 421; 23 Eng. Repr. 870; *Pitcher* v. *Tovey*, 4 Mod. 71, 87 Eng. Repr. 269; *Eaton* v. *Jaques*, Douglas 461; *Kirby* v. *Goldman*, 270 Mass. 444; *Childs* v. *Clark*, 3 Barb. Ch. 52; *Mann* v. *Munch Brewery*, 225 N. Y. 189; *Cohen* v. *Todd*, 130 Minn. 227; 89 A. L. R. 433, note; 32 Am. Jur., Landlord and Tenant, § 386.

The plaintiff urges that as this court is "unfettered by prior decisions" on the subject, it should reject the "archaic doctrine" which has been "blindly followed" by most of the American courts since 1797, and adopt the "progressive rule" of the Texas court. In support of this progressive rule, so-called, the plaintiff cites three decisions by the Texas court of civil appeals of three different districts: *Waggoner* v. *Edwards*, 83 S. W. 2d 386; *Marathon Oil Co.* v. *Rone*,

83 S. W. 2d 1028; *Stark* v. *American National Bank of Beaumont,* 100 S. W. 2d 208.

In the *Waggoner* case, upon which the plaintiff most strongly relies, it was held that notwithstanding "the absence of an express agreement on the part of an assignee of the unexpired term of a lease of real property to assume and pay the rentals contracted to be paid by the original lessee . . . the assignee under such circumstances becomes primarily liable for the debt, and the original lessee only secondarily liable. The lessee having enjoyed and exercised his right to dispose of such leasehold estate, the assignee is held to take the estate subject to all the terms and conditions expressed in the original lease contract, and is bound to the original lessor for the performance of the obligations which were imposed upon his assignor, or, in other words, he simply stands in the shoes of the original lessee." The *Marathon Oil Co.* and *Stark* cases are to the same effect.

But at page 212 of its opinion on motion for rehearing in the *Stark* case, which is the latest of the three Texas cases cited to us by the plaintiff, the court frankly says that it decided that case as it did "solely because the holding follows the present rule of decision in this state", although it was "firmly convinced that the rule is not sound and that it is contrary to the holdings of the vast majority of other jurisdictions." The court there urges the supreme court of that state to promulgate a rule of decision "in keeping with the great weight of authority and which it is believed is more consistent with the principles of justice." It then gives its reasons for suggesting such a change. In view of the cogency of these reasons against the Texas rule, we think that a somewhat extensive quotation from that opinion is justified here.

At page 213 of the opinion under consideration the court says that the effect of the Texas rule is to "place an assignee in complete privity of contract with the original lessor as a matter of law by reason of the assignment alone, without any stipulation or agreement on his part to become so bound.

. . . When a property owner leases his property to another and confers upon such lessee the rights to assign to whomsoever he pleases, he impliedly relies upon his lessee for the performance of the covenants of the lease. In addition to that he has the personal obligation of each assignee so long as he keeps the estate and also the right at all times to repossess his property for a breach of covenant. And while the lessee, when he assigns, may impose upon his assignee the obligations of the original lease contract, that matter should be left to the contract of the parties. It should not be read into an assignment as a mere legal implication."

Apparently the Texas rule has never been squarely considered by the supreme court of that state, for no decision of that court to that effect has been cited to us by either party in this case, nor have we been able to find one in our own investigation. It seems that what is termed as "the present rule of decision" in the *Stark* case, with reference to a situation like the one in the instant case, finds its origin in *Davis* v. *Vidal*, 105 Texas 444, (1912) which is clearly distinguishable in its facts from the three Texas cases upon which the plaintiff relies and from the case at bar.

The plaintiff here further argues that the majority rule under consideration, which makes an assignee who does not expressly assume to pay the rent stipulated in the original lease liable only for such rent as accrues while privity of estate exists, may not operate unfairly in cases of short term leases, but that in long term leases, as in the instant case, it results in "an artificially induced lack of mutuality", which "should not commend itself to a court which is not bound by the precedent of its own decisions." In the *Stark* case, the court, at page 213 of that opinion, takes a contrary view and says that the Texas rule, which makes an assignee liable by mere legal implication in the circumstances above stated "is unnecessarily harsh and unjust and may, in its operation, tend to hamper the assignment of long term leases." But, whatever may be the practical result under either rule, the plain answer to the plaintiff's argu-

ment on this point is that the lessor has it within his power to protect himself against any detriment to him by incorporating adequate provisions in the lease concerning assignments thereof. If he chooses to execute a lease without adequately protecting his rights as lessor thereunder, he cannot thereafter complain if, by force of law, he is deprived of a benefit that he might otherwise have secured for himself.

After careful examination and consideration of the majority rule and of the Texas rule, our conclusion is that the former of these rules is not the blind following of an old English doctrine, as the plaintiff would like to have us believe, but that it is the embodiment of the considered judgment of American courts whose opinions should not be cast aside by mere summary characterization. In our opinion, the majority rule, which, in the absence of any restrictions in the lease governing its assignment, has the effect of leaving the matter of the assumption by an assignee of future rentals for the unexpired term of the lease to the contract between him and his assignor, is the sounder rule. We therefore cannot agree with the plaintiff's first contention.

Plaintiff's second and third contentions raise issues of fact. In our opinion the evidence on those issues is reasonably open to different conclusions, and in such case this court will not disturb the findings of fact made by a trial justice sitting without a jury unless such findings are clearly wrong. This rule is so well established with us that it requires no citation of authority. It is not possible to set forth in any detail the evidence in connection with the issues of fact raised by these contentions. Suffice it therefore to say that we have read the transcript and the numerous exhibits in the case, and have carefully considered, in all its aspects, the evidence upon which the plaintiff relies.

The plaintiff's second contention is that even though the defendant, as assignee, did not expressly assume to pay rent for the entire unexpired term of the lease, it nevertheless

"indirectly" assumed to pay such rent by its course of dealing with the plaintiff's predecessor in title. In support of this contention, the plaintiff relies upon the effect, both singly and collectively, of the four incidents that follow:

The first incident relates to the building in 1905 of a railroad siding, which ran across a portion of the leased premises. The extended negotiations respecting the construction, use and upkeep of this sidetrack involved agreements by the railroad company, the Atlantic Mills, plaintiff's predecessor in title, and the American Woolen Company of New Jersey, defendant's assignor. Because a portion of the land which the track crossed is variously described in these agreements as, for example, "land belonging under lease to the American Woolen Company", or as "land leased or owned by the American Woolen Company", instead of it being described as "land covered by lease now held by the American Woolen Company"; and further, because one of these agreements provides that it was "to continue as long as the leases to each of the respective above-named parties, or any acquired ownership by them, shall continue", the plaintiff argues that: "This is clearly language 'consistent only' with the American Woolen Company's having a status of lessee and not of assignee."

The trial justice found no language in these instruments or in the correspondence relative thereto from which it could be fairly inferred that a contract existed between the Atlantic Mills and the American Woolen Company to assume the obligations of the lease as claimed by the plaintiff. We see no reason for disturbing this finding of the trial justice. It is clear to us that in this phase of the case the only purpose of the parties was to define their respective rights and obligations regarding the construction, use and upkeep of the sidetrack, and not to extend the liability of the American Woolen Company beyond the liability that it was under as assignee in possession of the lease, as assigned.

The second incident involves the dealings between the

Atlantic Mills and the American Woolen Company (the New Jersey corporation) as occupants of adjoining tracts of land, regarding the use and maintenance of a certain gate and fences, which dealings resulted in an agreement dated November 19, 1915. Here again the plaintiff relies strongly upon the language in which the land occupied by the defendant is described, saying: "These many recitals that the land originally subleased to Riverside Worsted Mills was now leased to the American Woolen Company were clearly not employed inadvertently, but on the contrary fully and fairly present the understanding of the parties at the time as to the true relationship between the two companies. The words were used after Mr. Comstock had looked into the matter fully. They are wholly inconsistent with the theory that American Woolen Company was simply an assignee of the sublease." Mr. Comstock represented the Atlantic Mills.

The trial justice found that the use of different phraseology in describing the defendant's premises arose from the character of the subject matter; and that: "The parties were not thinking of the liability of the American Woolen Company to the Atlantic Mills under the covenants in the lease but of boundaries and the alleged trespasses of the Woolen Company and a satisfactory method of settling the differences between them arising from the alleged encroachments." Our independent consideration of all the evidence on this point leads us to the same conclusion. We find nothing in that evidence even tending to show that the parties intended to create or recognize any contract by which the defendant was to assume the obligations of the covenants of the lease.

The third incident on which the plaintiff relies to sustain its second contention is defendant's conduct in 1925 in connection with an increase in rent from $500 to $2333.33, due to a reappraisal of the rent made under conditions unnecessary to mention here. The notice of such increase was sent by the Atlantic Mills to the Riverside Worsted Mills, its

original lessee. The defendant did not pay the increased rent until after it had completed a careful investigation of the matter, which included many communications among its own representatives and also an interview with the vice president of the Atlantic Mills, who is said to have characterized the lease as "ironclad", whatever that ambiguous term meant to him.

The plaintiff, stressing the statement that the lease was "ironclad", argues that the evidence on this point, when considered as a whole, shows an assumption by the defendant of all the obligations of the lease involved in this case. The trial justice found to the contrary, and we agree with that finding. At best, the statement by the vice president of the Atlantic Mills was nothing more than the expression of an opinion by a layman in his own interests on a matter of law, which, as far as the evidence shows, was not acquiesced in by any duly authorized representative of the defendant. It is clear to us that the evidence on the point under consideration merely shows that the defendant, as assignee of the lease, deemed it necessary to make sure that it was obliged to pay the greatly increased rental, so long as it continued in possession of the premises.

The fourth incident in the chain of circumstances upon which the plaintiff relies to bind the defendant in this case is the payment of rent by the defendant from December 1931 to December 1934, while the lease was held by the National & Providence Worsted Mills. We recall here that the corporation last named was admittedly a subsidiary of the defendant; that the lease was assigned to it by the defendant on December 22, 1931, and that it reassigned the lease to the defendant on December 26, 1934. The plaintiff argues that because the defendant during those three years "regarded itself as the party primarily liable under the lease and paid the rent accordingly", such conduct on its part "constituted recognition that the lease had been fully assumed by the American Woolen Company."

It appears in evidence that in 1931 the defendant, to reduce expenses under the then existing financial situation, segregated all of its operating plants in Rhode Island in the National & Providence Worsted Mills, the defendant having entire stock ownership therein and control of its business. The bookkeeping was done by the defendant. All expenses of the National & Providence Worsted Mills, which included rent payments to the Atlantic Mills, were paid in the first instance by check of the defendant and the amounts so paid were then charged against that subsidiary. The trial justice found that under such circumstances the defendant could well pay rent for occupation of the premises by the subsidiary without assuming the covenants of the lease. We see no reason to disagree with this finding of the trial justice.

We have discussed, in a summary manner, the four incidents upon which the plaintiff relies because, as hereinbefore indicated, the space at our command does not permit a detailed refutation of the inferences that the plaintiff seeks to draw as the *only* inferences that can be drawn from the evidence on the points thus raised. In our opinion, such evidence is not consistent *only* with an assumption of the lease by the defendant. Whether that evidence is considered with reference to any one incident or to all of them collectively, it is fairly open to a conclusion contrary to that urged by the plaintiff. Our answer to plaintiff's second contention therefore is that the plaintiff has failed to show that the trial justice was clearly wrong in finding that the defendant had not bound itself to pay rent to the plaintiff for the entire unexpired term of the lease through its course of dealing with plaintiff's predecessor in title, the Atlantic Mills.

Plaintiff's third main contention is that the assignment of the lease from the Textile Realty Company, which was admittedly a subsidiary of the defendant, to the Reo Realty Company was "colorable" and therefore did not terminate

defendant's liability, even though it had not assumed the obligations of the lease.

The law on this point is also well settled. As early as 1780, in *Eaton* v. *Jaques*, Douglas 455, at page 460, Lord Mansfield said: "In leases, the lessee being a party to the original contract, continues always liable, notwithstanding any assignment; the assignee is only liable in respect of his possession of the thing. He bears the burden while he enjoys the benefit, and no longer . . . ." Unless fraudulent or colorable, a new assignment of the lease terminates the assignee's liability to the lessor for rent subsequently accruing. See authorities hereinbefore cited by us in discussing plaintiff's first main contention. If such assignee, by a new assignment, fairly relinquishes not only possession of the leased premises but also all benefits therefrom, it is immaterial that the new assignee may be financially irresponsible, or that he gave no consideration, or even that he received a bonus as an inducement to accept the assignment of the lease. *Fensterwald* v. *Samet*, 138 Md. 201; *Johnson* v. *Sherman* 15 Cal. 287; *Johnson* v. *First National Bank*, 53 Ga. App. 643. 32 Am. Juris. 388; 2 Taylor, Landlord and Tenant, 9th ed. pp. 33, 34.

The case is different, however, where such assignee makes an assignment which, though proper in form, leaves him as a matter of fact in possession of the leased premises or in receipt of benefits therefrom. In such case the assignment is colorable and will not terminate his liability to the lessor for rent, while he, in reality, continues in possession of the premises covered by the lease or enjoys any benefits from the use of such property. 32 Am. Juris. 388. See also *Harmon, Wastcoat, Dahl Co.* v. *Star Brewing Co.*, 232 Mass. 566; *McBee* v. *Sampson*, 66 Fed. 416.

The plaintiff here contends that the assignment by the Textile Realty Company to the Reo Realty Company was colorable. The defendant admits that it created the Textile Realty Company to serve as a medium for the sale of

certain properties that it considered either useless or unprofitable, but it vigorously denies that the assignment to the Reo Realty Company was not in good faith.

Among the properties that the defendant desired to sell and which it transferred to the Textile Realty Company for that purpose were the lease under consideration and some vacant land with a railroad siding, which vacant land it had been unable to sell in the open market. In July 1939, one Aaron J. Oster, who was in the scrap metal business, became interested in those properties and bought them the following November for $630.30, taking title thereto in the name of the Reo Realty Company, a corporation controlled by him and in which the defendant, according to the record before us, had no interest whatever. Oster, who testified that he purchased the property for "the sole reason of using it and making money with it", then tried to secure from the plaintiff a reduction of the rent payable under the lease but was unsuccessful. There is evidence that the Reo Realty Company paid one installment of rent and expended some money in repairs. We have thus summarized our understanding of the evidence because it is impossible to refer specifically in this opinion to the large amount of correspondence, memoranda and agreements which bear upon this aspect of the case.

The plaintiff claims that the transaction between the defendant, through the Textile Realty Company, and Oster, through the Reo Realty Company, was nothing more than a scheme by the former's officials "to procure a rent reduction and in effect a new lease." It draws this conclusion mainly from the fact that the Reo Realty Company was a new corporation without known assets and that it paid so small a sum for an assignment of the lease and a deed of the vacant land.

The trial justice found that the transaction under consideration was in good faith; that on or about November 29, 1939, the Reo Realty Company "entered into exclusive

control and possession of the leased premises", and that since that date "neither the American Woolen Company, the defendant, nor the Textile Realty Company has exercised any control over the leased premises; nor have they or either of them, had possession of such premises." We have found no competent evidence in contradiction of these findings of the trial justice. Unless resort is had to speculation or unwarranted suspicion, there is nothing to show, as the plaintiff states in its brief, that the transaction "envisaged", in the event that Oster failed to obtain a reduction of the rent, "the collapse of the dummy, Reo Realty Company, and the leaving of the property in the same status as if that company had never been formed and no assignment had been attempted." A fair consideration of the record before us shows that each of the parties in interest was assisted by able counsel and dealt with each other at arm's length in effecting a business transaction, which each party considered beneficial to itself.

Granting, as the plaintiff argues, that the amount paid by Oster for the leasehold and the vacant land was relatively small, yet, according to the authorities hereinbefore cited on the point under consideration, this fact was not enough to render the assignment from the Textile Realty Company to the Reo Realty Company colorable, so as to continue the liability, to the plaintiff, of the defendant as an assignee of the lease in constructive possession of the premises. In the absence of collusion, and we find none in the circumstances of this case, the defendant, which was not bound contractually to the contrary, could sell or dispose of its property on such terms as it chose in order to relieve itself of the burden resulting from the possession of property that had become useless or unprofitable, so long as it relinquished all benefits therefrom. For the reasons stated, the trial justice was not in error in finding that the assignment of the lease to the Reo Realty Company terminated defendant's liability for rent under the lease.

Plaintiff's other exceptions have been considered and found to be without merit.

The plaintiff's exceptions are all overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Edward Winsor, Edwards & Angell,* for plaintiff.

*Harold B. Tanner, Russell P. Jones, Tillinghast, Collins & Tanner,* for defendant.