**FIRST AMERICAN NATIONAL BANK OF NASHVILLE, Tennessee, Trustee, Plaintiff-Appellee,**

v.

**CHICKEN SYSTEM OF AMERICA, INC., and Performance Systems, Inc., Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

Sept. 5, 1980.

Rehearing Denied Nov. 7, 1980.

Certiorari Denied by Supreme Court May 4, 1981.

Charles C. Trabue, Jr., Trabue, Sturdivant & DeWitt, Nashville, for plaintiff-appellee.

George E. Copple, Jr., John L. Chambers, Chambers, Johnson & Beckner, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

This case arose out of a lease entered into on May 28, 1968, between plaintiff First American National Bank, Trustee, (First American) and defendant Chicken System of America, Inc., (Chicken System). The lease contained a provision which expressly prohibited any assignment or subletting without the written consent of First American. The lease was for a term of 180 months from May 28, 1968, at a rental of $1049.08 per month, and in addition Chicken System was required to pay premiums on all insurance and to pay all real estate taxes. Chicken System entered and took possession of the premises under the lease and paid all obligations to and including the month of April, 1969. On April 30, 1969, the President of defendant Performance Systems, Inc., (PSI) wrote to C. H. Wright of Wriking Foods/Beverage Systems, Inc., the parent company of Chicken System. We set out the pertinent parts of that letter:

This will confirm our mutual agreement for the purchase by us at March 30, 1969, of the Minnie Pearl's Chicken retail outlets owned by your subsidiaries at Murfreesboro Road and Nolensville Road, Nashville, Tennessee, for the sum of $137,329, plus $24,895.00. We will assume the contract payable to the Third National Bank, Nashville, Tennessee for the Nolensville Road Store, together with the rent deposit note to us on Murfreesboro Road per schedule attached. At the time of closing you will discharge your equipment note to Nashco Equipment and Supply Company in the amount of $24,895.00. For the price mentioned above and the assumption of these liabilities, we will acquire from you all inventories, store equipment, rent deposits and your franchise to operate these outlets.

You understand and agree that other liabilities relating to the operation of these stores incurred by you are for your account, except that the real estate and sign leases are our responsibility after April 30, 1969.

On May 5, 1969, First American was advised by Gale Smith & Company of insurance cancellations on the leased property and was informed of Gale Smith's understanding that the business had been purchased by PSI. Prior to that time First American had no knowledge of any agreement or possible agreement between Chicken System and PSI.

On May 8, 1969, First American's counsel wrote PSI in regard to the insurance coverage and also informed PSI that the premises could only be subleased with the written consent of First American. On June 6, 1969, First American's Counsel wrote to all concerned parties. Pertinent portions of that letter are as follows:

Under Section 24 of the lease agreement there may be no assignment or subletting without the written consent of the lessor. I wish to make it plain that as of this time no such consent has been given, nor will any such consent be given unless there is a formal request in writing, requesting same. Upon our receipt of such a written request, we will submit the proposal to those three individuals who have guaranteed performance of the lease by Chicken System of America, Inc., and if they have no objection to the assignment or sub-letting and will continue bound on their guaranty agreement, the Bank will probably have no objection to consenting to a sub-lease or assignment.

The guarantors did not at any time agree to remain bound on their guaranty agreement if the premises were sublet or assigned to PSI. The guarantors were originally defendants in this suit, but prior to trial a nonsuit as to them was taken by First American. There were several letters written by plaintiff's counsel and PSI's counsel regarding subletting or assignment, but at

no time did First American ever consent to an assignment of the lease from Chicken System to PSI.

PSI entered the premises and took possession and from May 1, 1969, through October, 1970, paid rent to First American. On November 1, 1970, PSI defaulted in payment of the rent and vacated the premises. Thereafter, First American filed suit in the Chancery Court for Davidson County against Chicken System and PSI and sought rent, insurance, taxes, and maintenance under the terms of the lease agreement due and owing until September 1, 1972. PSI's primary defense was that First American had withheld consent, that absent consent by First American the "assignment" from Chicken System to PSI was invalid and PSI was merely a tenant at sufferage, and that when PSI vacated the premises in November, 1970, its obligations and rights under the lease were suspended. The Chancellor held that the lack of consent could be waived by First American and could not be raised by PSI as a defense, that PSI's surrender of the premises in November, 1970, did not terminate privity of estate between it and First American, and that PSI was liable to First American for obligations of the lease running with the land, including the obligation to pay rent. PSI appealed, and the Supreme Court affirmed the Chancellor. *First American National Bank v. Chicken System of America, Inc.*, 510 S.W.2d 906 (Tenn.1974). The Court stated: "[T]here is privity of estate between an original lessor and a subsequent assignee that makes the assignee fully responsible to the lessor for the lease provisions." *Id.* at 908. The Court remanded to the Chancery Court for the purpose of ascertaining damages. The damages were stipulated, but the Chancellor allowed interest on the recovery. PSI again appealed to the Supreme Court which again affirmed the Chancellor. *Performance Systems, Inc. v. First American National Bank*, 554 S.W.2d 616 (Tenn.1977).

Following PSI's default in the payment of rent in November, 1970, First American, along with PSI, made efforts to find another tenant for the premises and received some ten proposals. PSI wrote First American and granted approval for First American to enter the premises in the interest of subleasing the land and permanent improvements. On June 1, 1971, PSI wrote First American again and stated: "It is important that we place a tenant in the property at the earliest possible time." First American, without consulting PSI or requesting PSI's consent, entered into a lease with Rodney E. and Melanie Fortner, d/b/a Sir Pizza of Madison, for a term of 60 months beginning the first day of September, 1972, at a rental of $600 per month. The Sir Pizza lease was renewed effective September 1, 1977, for a rental of $1000 per month.

First American has brought this suit for the deficiency in the rent and other obligations occurring after September 1, 1972, the date of the Sir Pizza lease. This case was presented to the Trial Court on stipulated facts, and the Chancellor found that First American was entitled to recover $47,384.27 from PSI. PSI has appealed. While both PSI and First American have set forth issues, we are of the opinion that answering only the following question is necessary to resolve this case. Is PSI liable to First American under either privity of estate or privity of contract?

## PRIVITY OF ESTATE

Three legal factors arise to create a liability running from the assignee of a leasehold to the lessor (a) privity of estate (b) covenants in the lease running with the land and (c) actual assumption of the covenants of the lease by the assignee. An assignee of a lease is bound by privity of estate to perform the express covenants which run with the land, but, in the absence of express agreement on his part, he is liable only on such covenants as run with the land and only during such time as he holds the term. (Footnote omitted.)

3A *Thompson on Real Property* § 1216 (1959).

An assignee, unless he has personally assumed the obligation of the lease, may

absolve himself from further liability by an act which terminates his privity of estate. [The lessee's assignee] has the benefit and the burden of all covenants running with the land as long as he holds the estate. Liability of the assignee to the lessor, being based solely on privity of estate, does not continue after he transfers his interest to another. The assignee may thus put an end to his liability by making a further assignment, and this ... although the second assignee is financially irresponsible. (Footnotes omitted.)

1 *American Law of Property* (A. Casner ed. 1952) § 3.61.

In accord with this rule is *McLean v. Caldwell*, 107 Tenn. 138, 64 S.W. 16 (1901), in which the Court stated:

As a general rule, the assignee of a lease is only liable for rents while in possession, *provided he reassigns the lease to the lessor or any other person*; and it does not matter that such assignment is made to a beggar, a minor, a married woman, a prisoner, or an insolvent, or to one hired to take the assignment, or made expressly to rid himself of liability.... (Emphasis added.)

The reason is that such reassignment and surrender of possession terminate the privity of estate existing between him and the landlord. (Citations omitted.) *Id.* at 140–41, 64 S.W. at 16–17.

*A. D. Juilliard & Co. v. American Wollen Co.*, 69 R.I. 215, 32 A.2d 800 (1943), is closely akin in facts to the case at bar. There the landlord leased premises to a lessee which, in turn, assigned the lease to the defendant. Thereafter, the defendant reassigned to a third party. The defendant assignee there, as here, had not expressly assumed the lease. The lessor there, as First American here, contended "that the assignee of a lease of real property ... is liable for the payment of the stipulated rent for the entire unexpired term, notwith-

standing that the assignee did not agree to assume such obligation and assigned the lease before the expiration of the term." *Id.* at 216, 32 A.2d at 801. The Court, in *Juilliard*, stated:

This contention is contrary to the overwhelming weight of authority both in England and this country .... [T]he courts in this country have consistently held that, in the absence of the assumption by the assignee of the obligations of the lease, the liability of such assignee to the lessor rests in privity of estate which is terminated by a new assignment of the lease made by the assignee.

*Id.*[1] With this rule, First American says it "has no quarrel." It insists, however, that the rule has no relevance to the case at bar since there was not a reassignment by PSI but a reletting of the premises by First American for the benefit of PSI. This contention is a distinction without difference. While mere abandonment by PSI without reassignment of the lease would not have terminated privity of estate, *McLean v. Caldwell*, 107 Tenn. 138, 141, 64 S.W. 16, 17 (1901), there was a reletting of the premises on September 1, 1972, by First American. When First American relet the premises to Sir Pizza, PSI's possessory rights to the premises terminated just as if PSI had reassigned the lease. Privity of estate terminated, and PSI had no further leasehold interest in the premises.

First American's contention that PSI is charged with knowledge of the covenants of the lease is correct only so long as the basis of liability exists, *i. e.*, during privity of estate. When privity of estate ended between First American and PSI, PSI was no longer charged with knowledge of the covenants of the lease. An assignee who has not assumed the lease "stands in the shoes" of the original lessee only for covenants that run with the land and then only during privity of estate. If this were not so, then the "dumping" of an unfavora-

1. *See also Cork-Oswalt, Inc. v. Hickory Hotel Co.*, 20 Ill.App.2d 406, 156 N.E.2d 259, 261–62 (1959); *Entroth Shoe Co. v. Johnson*, 260 Ky. 309, 85 S.W.2d 686, 688 (1935); *O'Neil v. A. F. Oys & Sons, Inc.*, 216 Minn. 354, 13 N.W.2d 8, 10 (1944); *Packard-Bamberger & Co. v. Maloof*, 89 N.J.Super. 128, 214 A.2d 45, 46 (1965).

ble lease would not be possible. Tennessee clearly recognizes that an assignee who has not assumed the lease may "dump it." *Id.* at 140–41, 64 S.W. at 17.

## PRIVITY OF CONTRACT

■ First American contends that the following stipulated facts "demonstrate that PSI assumed the obligations of the Chicken System lease thereby placing it in privity of contract with First American":

1. An agreement was entered into between Chicken System of America, Inc. and Performance Systems, Inc., which is reflected in a letter dated April 30, 1969, from Edward G. Nelson, President of Performance Systems, Inc., to C. H. Wright of Wriking Food/Beverage Systems, Inc., the parent company of Chicken System of America, Inc.

2. The letter, as it related to PSI's purchase of the Nolensville Road store, provided in relevant part that "You understand and agree that other liabilities relating to the operation of these stores incurred by you are for your account, except that the real estate and sign leases are our responsibility [PSI] after April 30, 1969.

3. After April 30, 1969, neither Chicken System of America, nor its parent corporation paid any rent on the property. Rent on the property was paid by PSI from May 1, 1969 through October, 1970, and PSI was in possession of the premises during that time.

First American cites *Sander v. Piggly Wiggly Stores, Inc.*, 20 Tenn.App. 107, 95 S.W.2d 1266 (1936), and says that the facts there "strikingly resemble" the facts in the case at bar. We disagree. In *Sander* the assignee wrote the following letter to the lessor after the assumption of the lease:

"Dear Mr. Sander: *We occupy your store* at 2100 Chamberlain Avenue, this city, our store No. 125, *under lease contract with you.*

We find it desirable that certain changes be made in and at the front of the storeroom. If you will give us permission to make such changes as, in our discretion, we desire to make, the changes will be made without cost or expense to you; and we bind ourselves to undo the changes and restore the building to its present condition, thus making it again just as it now is in all of its details, and this will be accomplished within the period of our lease in order that a complete restoration may be made before possession is delivered to you at its termination. . . .

"Southern Stores Corporation,
"By J. W. Lyles, Manager,
Chatta. Dist."

*Id.* at 113, 95 S.W.2d at 1269 (emphasis added). The Court stated:

While it is necessary for the Piggly Wiggly Stores, Inc., to assign the lease to Southern Stores Corporation, and in said assignment for the Southern Stores Corporation to agree to perform the covenants of the lease, in order for the Southern Stores Corporation to be liable for the rent for the rest of the term . . ., yet we think this has been done. (Citation omitted.)

*Id.* at 114, 95 S.W.2d at 1270. In *Sander* the assignee acknowledged that it had assumed the lease contract, and the Court found that the assignee had agreed to perform the covenants of the lease. In the case at bar, we find no such acknowledgement.

In *Hart v. Socony-Vacuum Oil Co.*, 291 N.Y. 13, 50 N.E.2d 285 (1943), several years after an oral assignment of the lease the assignee signed a modification agreement in regard to the insurance requirements of the lease. The modification agreement contained the following provision: "It is further mutually understood and agreed that except as herein expressly modified, all other provisions and covenants contained in said lease shall remain in full force and effect." *Id.* at 15, 50 N.E.2d at 286. In rejecting the lessor's argument that this agreement was a personal assumption of the covenants of the lease on the part of the assignee, the Court stated:

There is strong authority which says that to hold liable an assignee under a lease, after he has given up the lease and vacated the premises, there must be produced an express promise by him to perform the covenants of the lease. . . . [S]uch an express covenant is never assumed to have been made—it must always be proven. . . . It is not every reference to, or mention of, the covenants of a lease, by an assignee, that amounts to an assumption by him. Even where he covenants that his assignment is to be "subject" to the terms of the lease, that language, without more definite words of promise, does not make him liable as by privity of contract. (Citations omitted.)

*Id.* at 15–18, 50 N.E.2d at 286–87.

In *Consolidated Coal Co. v. Peers,* 166 Ill. 361, 46 N.E. 1105 (1896), there was a written assignment to the assignee which said, according to plaintiff's declaration, that the lease was assigned " 'together with all the rights, privileges, and appurtenances thereunto appertaining or belonging, as the same were conveyed by the said lease, and subject to the agreements therein mentioned to be performed by said lessee.' " *Id.* at 368, 46 N.E. at 1108. The Court, in holding that the words, "subject to the agreements therein," inserted in the assignment did not import a covenant on the part of the assignee personally to pay the rents, said:

[I]t is the duty of a party who intends by a deed to bind another by a covenant in a former formal instrument to insert such covenant in the deed in such distinct and intelligible terms as that the party to be bound cannot be deceived, and not called upon the courts to infer such a covenant from equivocal words . . . .

*Id.* at 372, 46 N.E. at 1109.

In *Dassori v. Zarek,* 71 App.Div. 538, 539, 75 N.Y.S. 841, 842 (1902), the Court held that an assignment which stated, " 'subject, nevertheless, to the rents, covenants, conditions, and provisions therein also mentioned,' " was insufficient to constitute an assumption by the assignee. In *Meyer v. Alliance Investment Co.,* 84 N.J.Law. 450, 87 A. 476, 477 (1913), the Court stated:

The claim of the plaintiffs to recover rent of the defendant rests upon the words of the [lessor's] consent, "subject to all the terms, conditions and covenants contained in said lease." . . . "These are words of qualification and not of contract." *Wolveridge v. Steward,* 1 Cromp. & M. 644. The case is similar to a conveyance of land subject to a mortgage. The grantee is not personally bound unless there are words equivalent to an assumption of the mortgage.

■ Before there is privity of contract between the assignee and the lessor, there must be an actual assumption of the lease. In the case at bar there was not an actual assumption, only a mere acceptance of an assignment.

In *Johnson v. First National Bank,* 53 Ga.App. 643, 187 S.E. 300 (1936), the lessor attempted to impute privity to an assignee bank because of its conduct subsequent to an assignment. The Court there said: "It is contended by the [lessor] that the conduct of the [assignee] shows that it recognized it was bound to the same extent as the original lessee with whom the contract was made, but the record fails to disclose that the [assignee] ever executed . . . a writing assuming the lease." *Id.* at 644, 187 S.E. at 301. Further, the Court stated:

"The assignment to the defendant was a naked assignment," and "the assignee having assumed no contract obligation cannot be sued on a contract." The same rule applies even though the assignee holds under a lease which provides that its covenants shall bind the lessee and his assigns, where there has been no *express* assumption of the lease. (emphasis in original)

*Id.* at 646, 187 S.E.2d at 302 (quoting *Cohen v. Todd,* 130 Minn. 227, 153 N.W. 531, 531 (1915).

"The mere acceptance of an assignment is not an assumption. Every assignment requires acceptance, . . . yet 'an assignee . . . who does not assume the performance of the covenants of the lease holds the lease merely under a privity of estate . . . .' " *Packard-Bamberger & Co. v. Maloof,* 89

N.J.Super. 128, 214 A.2d 45, 46–47 (1965) (quoting annot. 148 A.L.R. 196 (1944).

■ While no contention is made that there was a written contract between PSI and First American, First American argues, nevertheless, that certain statements made by PSI to other parties after the assignment by Chicken System to PSI created privity of contract between First American and PSI. First American cites *Crow v. Kaupp*, 50 S.W.2d 995 (Mo.1932), in support of this contention. *Crow* is readily distinguishable from the case at bar. In *Crow* the assignee assumed the lease by written assignment which provided, in pertinent part: " '[T]he second parties . . . hereby further bind and obligate themselves, their heirs and assigns, to assume the payment of all rent . . . to the said . . . owner . . . it being understood that the second parties hereto assume the above mentioned contract, together with all liabilities and obligations created thereby. . . . ' " *Id.* at 996–97. The assignee, in *Crow*, made a complete and detailed assumption of the lease. In the case at bar, the assignment to PSI by Chicken System was oral, and PSI made no promise at any time to be bound to First American.

We are of the opinion that privity of estate between First American and PSI terminated upon PSI's abandonment of the premises and the reletting of the premises to Sir Pizza by First American. We further hold that there was no privity of contract between PSI and First American.

The judgment of the Chancellor is reversed, and this cause is dismissed with costs to First American.

SHRIVER, P. J., and TODD, J., concur.

OPINION ON PETITION TO REHEAR

LEWIS, Judge.

■ Plaintiff has filed a courteous and forceful Petition to Rehear. Plaintiff argues that under our Opinion a lessor might be discouraged from reletting premises and that this would be a detriment to a lessee. No such construction is warranted. We

simply hold that under facts such as in the case at bar where only privity of estate exists between the original lessor and the assignee of the original lessee, the assignee is no longer liable for rent when the assignee gives up possession and the lease is reassigned either to the lessor or to some other person. *See McLean v. Caldwell*, 107 Tenn. 138, 64 S.W. 16 (1901).

Plaintiff does correctly point out that this Court considered only the liability of Performance Systems, Inc. So there can be no misunderstanding, we amend our Opinion by deleting the last paragraph, and substituting the following:

The judgment of the Chancellor as to Performance Systems, Inc. is reversed and dismissed with costs to First American. The case is remanded to the Chancery Court for collection of costs and any other necessary proceedings.

We otherwise adhere to our original opinion. Costs are taxed to First American.

TODD, P. J., and SHRIVER, J., concur.