T.C. Memo. 2001-108


UNITED STATES TAX COURT


NORTHERN TELECOM INC. & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2045-97.                      Filed May 7, 2001.


N. Jerold Cohen, W. Scott Wright, J.D. Fleming, Jr.,

Stephen F. Gertzman, Daniel R. McKeithen, and Walter T.

Henderson, Jr., for petitioner.

Gary F. Walker and Nancy W. Hale, for respondent.


MEMORANDUM OPINION

COHEN, Judge: Respondent determined the following

deficiencies in petitioner's consolidated Federal income tax:

| Year | Deficiency |
|------|-----------|
| 1981 | $ 12,593,692 |
| 1982 | 51,639,634 |
| 1983 | 82,327,873 |
| 1984 | 153,418,047 |
| 1985 | 223,328,166 |

After concessions, the issue for decision is whether petitioner sold property to its wholly owned subsidiary in intercompany transactions pursuant to section 1.1502-13, Income Tax Regs., where the subsidiary received its rights to acquire the property by assignment from third parties who were not members of petitioner's consolidated group. This issue is before the Court on cross-motions for partial summary judgment pursuant to Rule 121. The record shows, and the parties agree, that there is no genuine issue of material fact. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Northern Telecom Inc. (petitioner) is the common parent of an affiliated group of corporations, which, at the time of the filing of the petition, had a principal place of business in Nashville, Tennessee. Petitioner is a corporation organized and existing under the laws of the State of Delaware. Petitioner and its subsidiaries filed consolidated Federal income tax returns during all of the years in issue.

During the years in issue, petitioner entered into purchase agreements with third-party customers (who were not members of petitioner's consolidated group), by which petitioner would design, manufacture, and install telephone systems. Each purchase agreement obligated petitioner to produce a telephone system, provide a license for computer software that would run the telephone system, provide patent infringement protection, train employees of a customer to operate the system, and repair any problems or defects that arose during a 12-month period beginning when the system was placed in service.

In exchange, each customer agreed to pay a set price for the telephone system and to pay all taxes associated with the transaction except for petitioner's franchise and income tax liabilities. In some of the purchase agreements, the set price was due in installments beginning with a downpayment paid on the date when the purchase agreement was signed and ending with a payment due on a date that was within 30 days of the system's being placed in service. Other purchase agreements required the set price to be paid in one lump sum due on the day that the system was placed in service. Each purchase agreement further provided that risk of loss would switch to the customers upon delivery of each component of the telephone system, title passage would occur when the price and taxes were paid in full, and petitioner would have a security interest in any delivered

property until the set price was paid in full. The third-party customers were prohibited from assigning their rights under the purchase agreement without the consent of petitioner.

Northern Telecom Finance Corporation (subsidiary) is a wholly owned subsidiary of petitioner. In some situations, after entering into a purchase agreement, petitioner and a third-party customer entered into an agreement with the subsidiary titled Assignment and Delegation. Each assignment and delegation agreement contains a choice of jurisdiction clause that subjects the agreement to the laws of New York, Tennessee, or Texas.

In each assignment and delegation agreement, the third-party customer assigned to the subsidiary the customer's rights under the purchase agreement to receive title in the telephone system, the license in the computer software, and the rights to patent protection. The assignment and delegation agreements also gave the third-party customers the option to elect interim funding, in which the subsidiary would pay the set price to petitioner. If interim funding was not elected, the third-party customer retained the responsibility of paying the set price to petitioner and the subsidiary was to reimburse the third-party customer at a later date.

Concurrent with the creation of each assignment and delegation agreement, the third-party customer and the subsidiary entered into a lease agreement, whereby the customer leased the

telephone system from the subsidiary. The lease of the system was on a net lease basis such that the third-party customer was responsible for all taxes, fees, and maintenance associated with the system.

Petitioner carried out other sales of telephone systems during the years in issue, in which petitioner entered into purchase agreements directly with the subsidiary rather than with a third-party customer. Respondent admits that these direct sales of property to the subsidiary qualify as intercompany transactions under section 1.1502-13, Income Tax Regs.

## Discussion

Respondent argues that, in form and substance, a sale of property from one member of a consolidated group to another member of the same group, within the meaning of section 1.1502-13(a)(1)(i), Income Tax Regs., did not occur in this case, because the rights of the subsidiary to receive title in the telephone systems were acquired by assignment from a third-party customer rather than from petitioner by purchase. Respondent admits that, if the third-party customers had relinquished their rights under the purchase agreements back to petitioner and if petitioner and the subsidiary had executed new purchase agreements for the telephone systems, an intercompany transaction would have occurred. However, respondent contends that petitioner chose the manner in which the transactions were

carried out and that petitioner must now accept the tax consequences of that choice. According to respondent, his "argument stems solely from his legal proposition that the transactional documents show that * * * [the subsidiary] did not purchase the system from * * * [petitioner] within the meaning of Treas. Reg. sec. 1.1502-13(a)(2)."

Petitioner argues that the transactions in question were intercompany transactions under section 1.1502-13(a)(1)(i), Income Tax Regs., because the subsidiary obtained, from the third-party customer, the right to acquire the systems directly from petitioner before any sale of the telephone systems could occur pursuant to the purchase agreements.

Pursuant to section 1.1502-13(c)(1)(i), Income Tax Regs., gain or loss that is recognized on the sale of property in a qualifying deferred intercompany transaction between corporations who are members of the same consolidated group shall be deferred by the selling member. See Textron Inc. v. Commissioner, 115 T.C. 104, 110 (2000). Generally, the gain or loss is deferred until the occurrence of a triggering event, such as a disposition of the property in a subsequent transaction outside the consolidated group or depreciation allowed to a member of the consolidated group with respect to the property. The policy behind the deferment rule is that a consolidated group should be viewed as a single taxable enterprise. Thus, the tax liability

of a consolidated group should be based on dealings with outsiders rather than on transactions within the group.  See id.

Section 1.1502-13(a)(2), Income Tax Regs., defines a "deferred intercompany transaction" to include the sale or exchange of property or any other expenditure in which the amount of the expenditure is capitalized in an intercompany transaction. An intercompany transaction includes:

> [A] transaction during a consolidated return year between corporations which are members of the same group immediately after such transaction.  Thus, for example, an intercompany transaction would include a sale of property by one member of a group (hereinafter referred to as the "selling member") to another member of the same group ("purchasing member"), the performance of services by one member of a group * * * for another member of the same group * * *, or the payment of interest by one member of a group * * * to another member of the same group * * *, during a consolidated return year.  [Sec. 1.1502-13(a)(1)(i), Income Tax Regs.; emphasis added.]

Respondent argues that petitioner did not have ownership rights in the telephone systems as the systems were being produced.  Instead, respondent asserts that the rights of the third-party customers in the telephone systems were superior to those of petitioner during the period of production because of the commitments under the purchase agreements.  Respondent contends that petitioner was never free to sell the telephone systems to the subsidiary or anyone else.  Thus, respondent argues that the third-party customers were the source of the

rights in the telephone systems that were transferred to the subsidiary.

Generally, State law determines what rights and interests are transferred by contract for Federal income tax purposes. See Hoven v. Commissioner, 56 T.C. 50, 55 (1971). Although the record does not reveal the jurisdiction to which the purchase agreements are subject, we assume that the purchase agreements are subject to the same jurisdictions as the assignment and delegation agreements. Those jurisdictions are New York, Tennessee, or Texas. Each of these States has enacted statutes declaring that an agreement that purports to sell property in the future, when the property is either nonexisting or unidentified at the time of agreement, does not constitute a sale of underlying property. See N.Y. Com. Law sec. 2-105 (McKinney 1962); Tenn. Code Ann. sec. 47-2-105 (1963); Tex. Bus. & Com. Code Ann. sec. 2.105 (West 1967). Instead, a present sale of nonexisting property or goods operates as a contractual obligation to buy and sell property at a later date. A contractual right to purchase nonexisting property in the future is not a property interest in the underlying property. See Hoven v. Commissioner, supra at 56-57; Armstrong v. Commissioner, 6 T.C. 1166, 1173-1174 (1946), affd. 162 F.2d 199 (3d Cir. 1947).

The critical question is whether, in entering into the assignment and delegation agreements, the subsidiary received

property interests in the telephone systems from the third-party customers or whether the subsidiary received a contractual right to purchase the telephone systems in the future.  If the subsidiary received a contractual right to purchase nonexisting property in the future, then an intercompany transaction would have occurred because the actual sale of the telephone systems would have occurred at a later date with petitioner acting as the seller and the subsidiary acting as the buyer.  See Hoven v. Commissioner, supra at 56-57; Armstrong v. Commissioner, supra at 1173-1174.

Analysis of whether the subsidiary received contractual rights to purchase nonexisting property in the future or whether the subsidiary received property interests in the telephone systems depends on the nature of the property that was acquired by the third-party purchaser in the purchase agreement.  If the third-party customer acquired only contractual rights to purchase nonexisting property in the future, then, in the assignment and delegation agreements, the nature of the property that was transferred from the third-party customers to the subsidiary was contractual rights to purchase nonexisting rights in the future. See Johnson v. Commissioner, T.C. Memo. 1973-159.

Respondent argues that petitioner lost its ability to act as the seller-transferor of the telephone systems after entering into the purchase agreements.  The purchase agreements in issue

obligated petitioner to design and manufacture telephone systems that were not in existence at the time of contracting.  Thus, the purchase agreements are contracts to sell nonexisting property in the future, and the agreements do not give the third-party customers an ownership interest in the telephone systems.  See Beck v. Commissioner, T.C. Memo. 1987-359.

Each purchase agreement bound petitioner to supply a telephone system that met certain requirements on a date specified.  Until that date, each telephone system and each component that made up the system were the exclusive property of petitioner.  When the third-party customers entered into the assignment and delegation agreements with the subsidiary, the subsidiary received the third-party customer's contractual right to receive nonexisting property in the future.  The third-party customer could not transfer ownership interests in property that it had not yet acquired itself.  Instead, the subsidiary's ownership interests in the telephone systems were derived by sales from petitioner.  The subsidiary did not receive its ownership interest in the telephone systems until the burdens and benefits of ownership shifted from petitioner, as seller, to the subsidiary, as purchaser.

Reliance by respondent on First Am. Natl. Bank v. Chicken Sys. of Am., 616 S.W.2d 156 (Tenn. Ct. App. 1980), is misplaced. In First Am. Natl. Bank, an owner of real estate (lessor) entered

into a lease agreement with a lessee.  The lessee then assigned its leasehold interest to an assignee.  The Tennessee Court of Appeals stated:

> Before there is privity of contract between the assignee and the lessor, there must be an actual assumption of the lease.  In the case at bar there was not an actual assumption, only a mere acceptance of an assignment.  [Id. at 161.]

Respondent argues that, by analogy, the subsidiary is in the same position with petitioner as was the assignee with the lessor in First Am. Natl. Bank.  Respondent claims that the subsidiary received no rights from petitioner because the subsidiary had no direct sales agreement with petitioner, just as the assignee had no lease agreement with the lessor in First Am. Natl. Bank.

First Am. Natl. Bank involved a leasehold interest in real property that existed at the time of contracting.  Thus, when the lessor and lessee entered into the original lease agreement, the lessee received a leasehold property interest in the real estate.  In the case at hand, the telephone systems were not in existence when petitioner and the third-party customers entered into the purchase agreements.  Thus, there was no property in which the third-party customers could acquire property interests.  The third-party customers received only contractual rights to purchase the telephone systems at a later date.  Before the property came into existence, the third-party customers assigned their contractual rights to the subsidiary.  When the property

finally came into existence and property interests changed hands by virtue of the purchase agreements and the assignment and delegation agreements, the transfer occurred between petitioner, as seller, and the subsidiary, as buyer.

The next argument of respondent is that, even if the subsidiary received contractual rights to purchase nonexisting property in the future from the third-party customers followed by receipt of property interests in the telephone systems from petitioner, the transaction was not an intercompany transaction. Essentially, respondent contends that the transactions were three-party transactions in which the subsidiary received its rights through the third-party customers, and, thus, not all parties of the transaction were members of one consolidated group.

Section 1.1502-13(a)(1)(i), Income Tax Regs., states that "an intercompany transaction would include a sale of property by one member of a group * * * to another member of the same group." (Emphasis added.) Thus, in determining whether a sale occurred between members of the same consolidated group, we look at the participants to the sale of the property. As already set forth above, under the State law governing these transactions, a transfer of a contractual right to purchase nonexisting property in the future is not a part of the sale of the underlying contractual property. The parties to the sale, which occurred

when the burdens and benefits of ownership of the telephone systems changed hands, were petitioner, as seller, and the subsidiary, as buyer.  The third-party customer, who held a contractual right prior to the sale, was not a party to the sale of the underlying contractual property.  The intermediary ownership by the third-party customers of a contractual right to receive property in the future is ignored in determining whether an intercompany transaction occurred.

We have considered all remaining arguments made by respondent for a result contrary to that expressed herein, and, to the extent not discussed above, they are irrelevant or without merit.  Petitioner's motion for partial summary judgment will be granted, and respondent's motion for partial summary judgment will be denied.

To reflect the foregoing,

An appropriate order will

be issued.